IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:25-cv-00629 |
| v. | ) ) ) | |
| LAURA'S FINANCIAL CONSULTING SERVICES LLC and LAURA SOBODE *individually and doing business as* LAURA'S EXCELLENTE TAX SERVICE, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## COMPLAINT FOR PERMANENT INJUNCTION

The Government files this action under 26 U.S.C. §§ 7402(a), 7407, and 7408 of the Internal

Revenue Code, to permanently enjoin Laura's Financial Consulting Services LLC and its owner, Laura

Sobode, and anyone in concert or participation with them, from acting as a federal tax-return preparer

and engaging in related activities. In support of this Complaint, the United States alleges as follows:

### JURISDICTION AND VENUE

1.       This action is authorized and requested by the Chief Counsel of the Internal Revenue

Service, a delegate of the Secretary of the Treasury, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408,

and is commenced at the direction of a delegate of the Attorney General of the United States.

2.       The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1340 and 1345, and

26 U.S.C. §§ 7402, 7407, and 7408.

3.       Venue is proper under 26 U.S.C. §§ 7407(a), 7408(a), and 28 U.S.C. § 1391 (b), because

the Defendants reside in—and a substantial portion of the actions giving rise to the Government's

claims here occurred in—Harris County, Texas, within the bounds of this Court. 28 U.S.C. § 124(b)(2).

**PARTIES**

4.      Plaintiff is the United States of America (the Government).

5.      Defendant, Laura Sobode, is a "tax-return preparer" under 26 U.S.C. § 7701(a)(36) because, among other things, she prepares federal tax returns for customers for compensation.

6.      Formed in Texas in 2017, Defendant, Laura's Financial Consulting Services LLC, (Sobode's LLC) is a company whose principal place of business is in Houston, Texas and which is owned solely by Sobode. Sobode acts as a federal tax-return preparer through Sobode's LLC. Sobode also employs other persons through Sobode's LLC to prepare federal tax returns for compensation.[1]

**LAURA SOBODE PREPARES FEDERAL TAX RETURNS AS A "GHOST" RETURN PREPARER**

7.      "Individuals who prepare but, do not sign [tax] returns [that they have prepared for customers] are known as 'ghost' preparers." *United States v. Umbrella Financial Services, LLC.*, No. 3:22-CV-2759-D, 2024 WL 455341, at *3 n.2 (N.D. Tex. Feb. 5, 2024) (Fitzwater, J.).

8.      Sobode has prepared thousands of federal tax returns for paying customers.

9.      Historically, Sobode has operated as a "ghost" federal tax return preparer.

10.     Numerous returns that Sobode has prepared for customers include (i) fabricated Schedule C business losses designed to unlawfully reduce the customer's tax liabilities and inflate their tax refund; (ii) never-incurred medical expenses; (iii) and falsified household wages and tax credits.

11.     In 2015, Sobode obtained a Preparer Tax Identification Number (PTIN) ending in 4471. The Internal Revenue Service issues any PTIN to paid tax return preparers such as Sobode to identify the returns they prepare.

12.     Sobode has operated as a ghost preparer and often eschews using her own PTIN because she knows that returns she prepares contain fabrications and violate federal tax laws. Sobode

---

[1] Sobode and Sobode's LLC are at times collectively referred to in this Complaint as the "Defendants."

2

has filed such returns as a "ghost" because she believes such will reduce the likelihood that the IRS will associate the returns with her or her LLC.

13.     Sobode has also prepared returns for paying customers in non-ghost capacity. Many returns prepared by Sobode include her name, phone number, PTIN, and business address located within the judicial bounds of this district, for example as follows:

| **Paid Preparer Use Only** | Preparer's name LAURA SOBODE | Preparer's signature | Date 02-24-2023 | PTIN ▉471 | Check if: ☑ Self-employed |
|---|---|---|---|---|---|
| | Firm's name    LAURAS FINACIAL CONSULTING SER | | | | Phone no. ▉ |
| | Firm's address 3823 SYNOTT ROAD SUITE A   HOUSTON, TX, 77082 | | | Firm's EIN ▉ | |

14.     Sobode also hires return preparers to work for Sobode's LLC. Those employees have likewise prepared falsified federal tax returns for paying customers. On tax returns prepared by such employees, the employees list "LAURAS FINACIAL CONSULTING SER" as the firm name.

15.     Even despite Sobode's historical ghost status, dozens of tax-return preparation customers have identified their return-preparer as Sobode or an employee of Sobode at Sobode's LLC.

### THE IRS HAS IDENTIFIED SOBODE AS A PREPARER BY TRACING HER RETURNS TO TWO IP ADDRESSES

16.     The IRS learned that an individual prepared returns in ghost capacity containing suspicious entries using two Internet Protocol (IP) addresses:[2] 73.166.60.139 (the 139 IP Address) and 73.166.63.5 (the 5 IP Address). Returns prepared using those IP Addresses did not contain any preparer's name or contact information; the IRS interviewed dozens of customers whose returns were associated with those IP Addresses. Numerous customers identified Sobode or her employees as their tax return preparer. At least one customer provided the IRS with a copy of Sobode's business card.

17.     A substantial amount of returns prepared by Sobode include fabrications, including,

---

[2] An IP address is "the numeric address of a computer on the Internet." MERRIAM-WEBSTER, IP ADDRESS, available at https://www.merriam-webster.com/dictionary/IP%20address (Last visited February 10, 2025).

falsified Schedule C businesses, falsified tax credits, and falsified household help expenses. Moreover, a significant portion of such returns have resulted in an unusually high number of tax refunds.

18.     For example, the following chart reflects the amount of returns prepared by Sobode using the 5 IP Address; the subset amount of refunds issued; and returns with Schedule C or the Earned Income Tax Credit (EITC), during the years noted:

| Processing Year | # of Returns | # of Refunds | # of Returns with Schedule C | # of Returns with EITC |
|---|---|---|---|---|
| 2022 | 1,485 | 1,476 | 1,377 | 785 |
| 2021 | 1,657 | 1,641 | 1,656 | 769 |
| 2020 | 1,443 | 1,237 | 1256 | 671 |
| 2019 | 9 | 8 | 7 | 4 |

19.     Accordingly:

a.   During 2022: 99% of returns prepared by Sobode from IP address 73.166.63.5 resulted in a tax refund to the customer; 93% of those returns contained Schedule C; and 53% of those returns contained EITCs.

b.   During 2021: 99% of returns prepared by Sobode from IP address 73.166.63.5 resulted in a tax refund to the customer; nearly 100% of those returns contained Schedule C; and 46% of those returns contained EITCs.

c.   During 2020: 86% of returns prepared by Sobode from IP address 73.166.63.5 resulted in a tax refund to the customer; 87% of those returns contained Schedule C; and 47% of those returns contained EITCs.

d.   During 2019: 86% of returns prepared by Sobode from IP address 73.166.63.5 resulted in a tax refund to the customer; 77% of those returns contained Schedule C; and 44% of those returns contained EITCs.

20.    In addition, the following chart reflects the amount of returns prepared by Sobode using the 139 IP Address in 2018 and 2019;[3] the subset amount of refunds issued; and returns with Schedule C or EITC:

| Processing Year | # of Returns | # of Refunds | # of Returns with Schedule C | # of Returns with EITC |
|---|---|---|---|---|
| 2019 | 1,158 | 1,149 | 1,024 | 581 |
| 2018 | 650 | 642 | 573 | 308 |

21.    Accordingly:

a.    In 2019: 99% of returns prepared by Sobode from IP address 73.166.60.139 resulted in a tax refund to the customer; 88% of those returns contained Schedule C; and 50% of those returns contained EITCs.

b.    In 2018: 99% of returns prepared by Sobode from IP address 73.166.60.139 resulted in a tax refund to the customer; 88% of those returns contained Schedule C; and 47% of those returns contained EITCs.

22.    Moreover, the following chart reflects the amount of returns prepared by Sobode using her PTIN in 2023:

| Processing Year | # of Returns | # of Refunds | # of Returns with Schedule C | # of Returns with EITC |
|---|---|---|---|---|
| 2023 | 1,102 | 1,047 | 697 | 338 |

23.    Accordingly:

a.    In 2023: 95% of returns prepared by Sobode using her PTIN resulted in a tax refund to the customer; 63% of those returns contained Schedule C; and 30% of

---

[3] Sobode also prepared 2 returns in 2020 from IP address 73.166.60.139, of which none resulted in a tax refund to the customer or contained EITC; but 1 of those returns contained a Schedule C loss.

those returns contained EITCs.

24.     Sobode and her business continue to prepare falsified federal tax returns—as recent as for the tax year 2023 (*i.e.*, during calendar year 2024). As of February 5, 2025, a webpage at www.lauraexcellentetaxservices.setmore.com offers various "services" for "taxes 2024" and "2024 tax return" and allows for customers to book an appointment for such with Sobode or her employees:



25.     Several of Sobode's clients have filed complaints with the IRS to report Sobode's misconduct. In 2021, the IRS assessed preparer penalties against Sobode for willful or reckless conduct as a tax-return preparer pursuant to section 6694(b) of the Internal Revenue Code.

26.     The IRS has also interviewed dozens of Sobode's customers. Such interviews have confirmed that Sobode and her business have repeatedly—for many years—prepared federal tax returns for paying customers which Defendants knew, or should have known, contained fabrications. Such returns include fabrications beyond Schedule C and EITC falsifications, as those reflected in the charts in Paragraphs 18 and 20, and include fabrications such as falsified Schedule A deductions, fake household help expenses, and falsified education credits. This Complaint focuses on Defendants' falsifications regarding Schedule C, Schedule A, household help expenses, and education tax credits.

**Sobode's Unlawful Return Practice**

*Unlawful Scheme for Schedule A Losses*

27.    A taxpayer may use a Schedule A, Itemized Deductions, on a tax return to itemize deductions for certain items such as medical care expenses, charitable contributions, and sales tax from their income before income tax is applied. Medical care means the amount paid for any diagnosis, cure, mitigation, treatment, or prevention disease, or for the purpose of affecting any structure or function of the body. It also includes certain medical-related transportation expenses, long-term care, and certain insurance. Charitable contributions are gifts or contributions made by a taxpayer to certain recipients. Sales tax refers to certain state and local general sales tax, including, on motor vehicles.

28.    A taxpayer may also deduct on a Schedule A any mortgage interest paid that tax year.

29.    Alternatively, the Internal Revenue Code provides, separate from Schedule A, a "standard deduction," which is a set dollar amount determined by filing status that non-itemizing taxpayers may subtract from their income before income tax is applied. Taxpayers generally use Schedule A if the total dollar amount of the itemized deductions exceed the standard deduction.

30.    Defendants prepare tax returns reporting false itemized deductions on Schedule A to falsely reduce their customers' taxable income. Defendants itemize deductions for never-occurred medical-care expenses, undocumented sales tax, and various fabricated charitable contributions. By creating these false Schedule A deductions, Defendants are able to offset their customers' earned income to obtain for them a tax refund to which they are not entitled. This harms the United States treasury.

*Unlawful Scheme for Schedule C Losses*

31.    An individual taxpayer who operates a business as a sole proprietorship must report the business' income and expenses on Schedule C (Profit or Loss from Business) of the taxpayer's tax return. The net figure reported on Schedule C, whether profit or loss, is a component of the taxpayer's

pre-tax income.

32.    Defendants report false information in their customers' Schedules C, such as fake business losses. Often, they include a Schedule C on returns for customers who they know do not own or operate any business. Other times, they include a Schedule C without speaking with a customer about business losses or expenses or without obtaining any documentation to support any Schedule C. This fraudulent practice reduces the amount of taxable income the customer reports to the IRS and the amount of tax they report as owed. It also leads to bogus refund claims.

33.    As part of their falsified Schedule C scheme, Defendants also report fake Household Help Expenses (HHE). Schedule H reports household employment if a taxpayer paid cash wages to a household employee and the wages were subject to Social Security, Medicare, or FUTA taxes, or if the taxpayer withheld federal income tax. Defendants report nonexistent household employment on customers' Schedule H and then report those amounts as supposed business expenses on Schedule C. And in many instances, the purported Schedule C business bears no relevance to any household help.

***Unlawful Scheme for False Education Credits***

34.    The American Opportunity Tax Credit (AOTC) is a credit for qualified education expenses of eligible students for the first four years of their higher education. The AOTC reduces the amount of tax reported by the taxpayer on a dollar-for-dollar basis up to $2,500.00. Up to $1,000.00 of that is refundable to the taxpayer if the amount of the credit exceeds the tax due. The educational institution provides the taxpayer and the IRS with a Form 1098-T that reports the qualified expenses.

35.    Defendants prepared Forms 8863 "Education Credits" that they attached to tax returns they prepared for customers, even though those customers did not qualify for the credits that the Defendants claimed for them.

36.    The following are examples of customers for whom Sobode and/or Sobode's LLC engage in these unlawful federal tax preparation activities.

**Customer 1**

37.      Sobode prepared tax returns for Customer 1 for the tax years 2019 and 2020. Customer 1 met with Sobode at Sobode's office and provided Sobode with Customer 1's Form W-2, "college" and "car expenses," and Social Security and other identification information.

38.      Customer 1 paid $200 for Sobode to prepare their federal tax returns.

39.      On Customer 1's 2020 Form 1040, Sobode reported Customer 1's W-2 income of $48,035.00 but, included a fabricated Schedule C, which reflected a $36,797.00 business loss related to an alleged "contractor" business. This "loss" was comprised of supposed expenses for advertising, car and truck expenses, depreciation, utilities, office expenses, and "other expenses."  Although Customer 1 told Sobode that they engaged in "side jobs," Customer 1 did not provide Sobode with any income or expenses to justify any Schedule C. In fact, Customer 1 was not aware that Sobode had included any such expenses on their federal tax return. Sobode also listed in Customer 1's 2020 Form 1040 $4,000.00 in qualified education expenses in a Form 8863. However, Customer 1 never provided Sobode with $4,000 worth of qualified education expenses. Sobode's fabrications helped reduce Customer 1's taxable income to $0.00, netting Customer 1 a tax refund of $7,643.00.

40.      On Customer 1's 2019 Form 1040, Sobode reported Customer 1's W-2 income of $46,913.00 but, included a fabricated Schedule C, which reflected a $35,571.00 business loss related to an alleged "contractor" business. This "loss" was comprised of supposed expenses for car and truck expenses, depreciation, utilities, office expenses, and "other expenses."  Although Customer 1 told Sobode that he engaged in "side jobs," Customer 1 did not provide Sobode with any income or expenses that Customer 1 sustained for any "side job." Customer 1 was not aware that Sobode had included any such expenses on their federal tax return. Sobode also listed in Customer 1's 2020 Form 1040 $3,956.00 in qualified education expenses in a Form 8863. However, Customer 1 never provided Sobode with $4,000 worth of qualified education expenses. Sobode's fabrications helped reduce

Customer 1's taxable income to $0.00, netting Customer 1 a tax refund of $7,453.00.

41.    Customer 1's 2019 and 2020 tax returns list no preparer or firm name. Sobode prepared both of those returns as a ghost preparer.

**Customer 2**

42.    Sobode prepared a tax return for Customer 2 for the 2020 tax year. Customer 2 met with Sobode and provided her with Customer 2's Form W2, Social Security and other identification information, and "documents for [Customer 2's] dependent."

43.    Customer 2 paid $200 for Sobode to prepare her federal tax return.

44.    On Customer 2's 2020 Form 1040, Sobode reported Customer 2's W-2 income of $2,346.00. Sobode also included on the Form 1040 $4,000.00 in supposed qualified education expenses in a Form 8863. Customer 2 did not attend school in 2020 and did not tell Sobode they did attend. Nor did Customer 2 provide Sobode with any education expenses. Instead, Sobode fabricated these expenses so that Customer 2 might qualify for the AOTC. Sobode's fabrication resulted in Customer 2 obtaining an inflated tax refund of $4,876.00.

45.    Customer 2's 2020 tax return lists no preparer or firm name. Sobode prepared such return as a ghost preparer.

**Customer 3**

46.    Sobode prepared a tax return for Customer 3 for the tax year 2020. Customer 3 met with Sobode at Sobode's office and provided her with Customer 3's Form W-2 and Social Security and other information. Customer 3 paid $200 for Sobode to prepare their federal tax return.

47.    On Customer 3's 2020 Form 1040, Sobode reported Customer 3's W-2 income of $36,335.00 but, included a fabricated Schedule C, which reflected a $28,515.00 business loss related to a "construction" business. This "loss" was comprised of supposed expenses for advertising, car and truck expenses, office expenses, utilities, and "other expenses." Although, Customer 3 told

10

Sobode that Customer 3 "helped [their] father sometimes," Customer 3 told Sobode that Customer 3 has no business. Customer 3 also did not provide Sobode with any business expenses and was not aware that Sobode had included such expenses on the federal tax return. Sobode also included on the tax return $4,000 in qualified education expenses in a Form 8863. Such amount is false, and Customer 3 did not provide Sobode with any education expenses. Instead, Sobode fabricated that amount to qualify Customer 3 for the AOTC. Sobode's fabrications helped reduce Customer 3's taxable income to $0.00, netting Customer 3 a tax refund of $3,730.00.

48.    Customer 3's 2020 tax return lists no preparer or firm name. Sobode prepared such return as a ghost preparer.

**Customer 4**

49.    Sobode prepared tax returns for Customer 4 for tax years 2019 and 2020. Customer 4 met with Sobode in person at Sobode's office. Customer 4 provided Sobode with Customer 4's Social Security and other identification information for both Customer 4 and Customer 4's dependents. Customer 4 paid $400.00 for Sobode to prepare their federal tax returns.

50.    On Customer 4's 2020 Form 1040, Sobode reported no W-2 income but, included fabricated Schedule C expenses, which reflected $7,956.00 in business expenses related to a "secretary services" business. These purported expense were for car and truck expenses, office expenses, and utilities. In truth, Customer 4 did not sustain any business expenses or tell Sobode that they had any such business or had sustained any expenses. Sobode also listed qualified education expenses of $4,000.00 for a particular dependent of Customer 4 in a Form 8863; yet Customer 4 did not claim that dependent in the tax year 2020. Sobode's fabrications helped net an inflated tax refund of nearly $4,000.00.

51.    On Customer 4's 2019 Form 1040, Sobode reported no W-2 income but, included a fabricated Schedule C, which reflected $3,659 of business expenses related to a "secretary services"

business. This included car and truck expenses only. In truth, Customer 4 did not sustain any business

expenses or tell Sobode that they had any business or had sustained any expenses. Sobode also listed

qualified education expenses of $4,000.00 for Customer 4's dependent; however, that entry was again

false. Sobode's fabrications helped net an inflated tax refund for Customer 4 of over $6,000.00.

52.     Customer 4's 2019 and 2020 tax returns list no preparer or firm name. Sobode

prepared those returns as a ghost preparer.

**Customer 5 and 6**

53.     Sobode prepared tax returns for Customers 5 and 6 for the tax years 2019, 2020, and

2021. Customer 5 met with Sobode and said that Sobode was "located on the internet." Customers 5

and 6 provided Sobode with their Forms W-2, Form 1099-G, and Social Security and other

identification and dependent information. They paid $400 for Sobode to prepare their federal tax

returns.

54.     On Customer 5 and 6's 2021 joint Form 1040, Sobode reported their W-2 income of

$120,302.00 but, included a fabricated Schedule C, which reflected a $35,109.00 business loss related

to a "maintenance" business. This "loss" was comprised of expenses for advertising, car and truck

expenses, depreciation, insurance, legal and professional services, office expenses, repairs and

maintenance, supplies, among other expenses. In truth, the Customers had no Schedule C business,

and Sobode asked about no such business. The Customers did not provide Sobode with any Schedule

C expenses and were not aware that Sobode had included such on the tax return. Sobode also included

a Schedule A which reflected nearly $80,000 of mortgage interest. In truth, however, the Customers

paid no mortgage interest in the tax year 2021 and provided no mortgage interest amount to Sobode.

They were not aware that Sobode had included such on their return. Sobode's fabrications helped

reduce Customer 5 and 6's taxable income to $2,872.00, netting them a tax refund of $13,407.00.

55.     On Customer 5 and 6's 2020 Form 1040, Sobode reported their W-2 income of

$107,896.00 but, included a fabricated Schedule A, which reflected $32,486 in supposed medical expenses. But the Customers did not provide Sobode with any amount for any supposed medical expenses during the tax year 2020. Although one of the Customers "had surgery" in 2020, their employer-provided health insurance covered the surgery. The Customers were not aware that Sobode had listed these supposed medical expenses on their federal tax return. Sobode's fabrications helped reduce Customer 5 and 6's taxable income to $87,286.00, which netted them a tax refund of $9,787.00.

56.     On Customer 5 and 6's 2019 Form 1040, Sobode reported their W-2 income of $129,973.00 but, included a fabricated Schedule C, which reflected a $44,791.00 business loss related to a "babysitting" business. This "loss" was comprised of expenses for advertising, car and truck expenses, depreciation, utilities, office expenses, and "other expenses." In truth, however, the Customers had no Schedule C business, and Sobode did not ask about any such business. Customers 5 and 6 did not provide Sobode with any Schedule C expenses and were not aware that Sobode had included such on their federal tax return. Sobode's fabrications helped reduce Customer 5 and 6's taxable income to $60,782.00, netting them a tax refund of $13,300.00.

57.     None of Customer 5 and 6's 2019, 2020, or 2021 tax returns reflect any preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customer 7**

58.     Sobode prepared tax returns for Customer 7 for the tax years 2019, 2020, and 2021. Customer 7 met with Sobode at Sobode's office. Customer 7 provided Sobode with their Form W-2 and Social Security and other identification information. Customer 7 paid $350 for the preparation of the tax returns.

59.     On Customer 7's 2019 Form 1040, Sobode reported their W-2 income of $64,620.00 but, included a fabricated Schedule C, which reflected a $32,415.00 business loss related to a "construction" business. This "loss" included car and track expenses and depreciation expenses.

13

Sobode asked Customer 7 whether Customer 7 engaged in "side jobs," to which Customer 7 responded they "do remodeling sometimes." Customer 7 also told Sobode that they "did not have the amount of income or expenses" to justify any Schedule C. Customer 7 never communicated any expenses to Sobode and was unaware that Sobode had included any purported expenses on their return. Sobode's fabrications helped reduce Customer 6's 2019 taxable income to $7,805.00, resulting in a refund of $9,860.00.

60.     On Customer 7's 2020 Form 1040, Sobode reported their W-2 income of $73,272.00 but, included a fabricated Schedule C, which reflected a $20,130.00 business loss related to a "construction" business. This "loss" included expenses for advertising, car and truck expenses, utilities, and "other" unspecified expenses. Customer 7 never communicated any expenses to Sobode and was unaware that Sobode had included those expenses on their return. Customer 7 had told Sobode that they "did not have the amount of income or expenses" to justify any Schedule C, but, Sobode including the falsified Schedule C, unbeknownst to Customer 7. Further, on Customer 7's 2020 Form 1040, Sobode included a falsified Schedule A deducting $38,134.00 for medical expenses. Sobode asked Customer 7 whether they had sustained any medical expenses, but, Customer 7 responded their spouse "has a disease" and "was admitted in the hospital" but their health insurance covered the expenses. Customer 7 never provided Sobode with any amount of medical expenses and stated that the $38,134.00 amount is "not true." Sobode's fabrications helped reduce Customer 7's 2020 taxable income to $18,994.00, netting a tax refund of $7,282.00.

61.     On Customer 7's 2021 Form 1040, Sobode reported their W-2 income of $74,838.00 but, included a fabricated Schedule C, which reflected a $24,057.00 business loss related to a "construction" business. This "loss" included expenses for advertising, car and truck expenses, utilities, office expenses, and unspecified "other" expenses. Customer 7 never communicated any expenses to Sobode and was unaware that Sobode had included those purported expenses on their

return. Customer 7 had told Sobode that they "did not have the amount of income or expenses" to justify any Schedule C, but, Sobode including the falsified Schedule C anyways and unbeknownst to Customer 7. Sobode's fabrications helped reduce Customer 7's 2021 taxable income to $24,081.00, netting a tax refund of $10,897.00.

62.     None of Customer 7's 2019, 2020, or 2021 tax returns reflected ay preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customer 8**

63.     Sobode prepared tax returns for Customer 8 for the tax years 2020 and 2021. Customer 8 met with Sobode at Sobode's office. Customer 8 provided Sobode with their Form W2 and Social Security and other identification information. In exchange for the preparation of the tax returns, Customer 8 paid $300 to 400.

64.     On Customer 8's 2020 Form 1040, Sobode reported their W-2 income of $141,728.00 but, included a fabricated Schedule C, which reflected a $92,620.00 business loss related to a "fish carpentry" business. This "loss" included expenses for advertising, car and truck expenses, contract labor, depreciation, office expenses, rent or leases, utilities, and other unspecified expenses. Customer 8 offered "handyman" services during the tax year 2020 but, never provided any business expenses to Sobode and was not aware that Sobode had listed such on the tax return. In fact, Customer 8 incurred none of the expenses that Sobode listed and had no office or any utilities. Sobode also included on Customer 8's 2020 tax return a fabricated Schedule A, which listed medical and dental expenses amounting to $28,064.00. In truth, Customer 7 had no medical expenses and provided none to Sobode. Sobode's fabrications helped reduce Customer 8's 2020 taxable income to $13,794.00, resulting in a refund of $3,104.00.

65.     On Customer 8's 2020 Form 1040, Sobode reported their W-2 income of $138,172.00 but, included a fabricated Schedule C, which reflected a $50,177.00 business loss related to a "fish

carpentry" business. This "loss" included expenses for advertising, car and truck expenses, utilities, office expenses and "other" unspecified expenses. Again, Customer 8 offered "handyman" services but, never provided any business expenses to Sobode and was not aware that Sobode had listed such on the tax return. Again, Customer 8 incurred none of the expenses that Sobode listed and had no office or any utilities Sobode's fabrications helped reduce Customer 8's 2020 taxable income to $75,145.00, netting a tax refund of $16,118.00.

66.     Neither Customer 8's 2020 or 2021 tax return reflects any preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customers 9 and 10**

67.     Sobode prepared tax returns for Customers 9 and 10 for the tax years 2019, 2020, and 2021. Customers 9 and 10 met with Sobode at Sobode's office. They provided Sobode with their Forms W-2 and Social Security and other identification information. The Customers paid Sobode money for preparing their returns.

68.     On Customer 9 and 10's 2019 Form 1040, Sobode reported their W-2 income of $92,277.00 but, included a fabricated Schedule C, which reflected a $59,213.00 business loss related to a "delivery man" business. This "loss" included expenses for advertising, car and truck expenses, and depreciation. Customers 9 and 10 did not know that Sobode listed such expenses on their 2019 tax return and provided Sobode with no amounts to justify the expenses. Sobode's fabrications helped reduce Customer 9 and 10's 2019 taxable income to $19,314.00, resulting in a refund of $9,423.00.

69.     On Customer 9 and 10's 2020 Form 1040, Sobode reported their W-2 income of $43,511.00 but, included a fabricated Schedule C, which reflected a $39,233.00 business loss related to a "delivery man" business. This "loss" included expenses for advertising, car and truck expenses, depreciation, utilities, and unidentified other expenses. Customers 9 and 10 did not know that Sobode listed such expenses on their 2020 tax return and provided Sobode with no amounts to justify the

expenses. Sobode's fabrications helped reduce Customer 9 and 10's 2020 taxable income to $25,081.00, resulting in a refund of $7,152.00.

70.     On Customer 9 and 10's 2021 Form 1040, Sobode reported their W-2 income of $64,360.00 but, included a fabricated Schedule C, which reflected a $46,304.00 business loss related to a "delivery man" business. This "loss" included expenses advertising, car and truck expenses, contract labor, legal and professional services, office expenses, supplies, taxes and licenses, and utilities. Customers 9 and 10 did not know that Sobode listed such expenses on their tax return and provided Sobode with no amounts to justify the expenses. Sobode's fabrications helped reduce Customer 9 and 10's 2021 taxable income to $6,838, resulting in a refund of $10,320.00.

71.     None of Customer 9 and 10's 2019, 2020, or 2021 tax returns reflects any preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customer 11**

72.     Sobode prepared tax returns for Customer 11 for tax years 2020 and 2021. Customer 11 met with Sobode at Sobode's office. Customer 11 paid Sobode money for preparing their returns.

73.     On Customer 11's 2020 Form 1040, Sobode reported their W-2 income of $36,055.00 but, included a fabricated Schedule C, which reflected a $24,817.00 business loss related to an "electrical contractor" business. This "loss" included expenses advertising, car and truck expenses, utilities, offense expenses, and other unspecified expenses. Customer 11 had no Schedule C business, is not familiar with Schedule C, and never provided any expenses to Sobode. Sobode's fabrications helped reduce Customer 11's 2020 taxable income to $0.00, resulting in a refund of $4,429.00.

74.     On Customer 11's 2021 Form 1040, Sobode reported their W-2 income of $28,547.00 but, included a fabricated Schedule C, which reflected a $15,081.00 business loss related to an "electrical contractor" business. This "loss" included expenses for advertising, car and truck expenses, depreciation, insurance, repair and maintenance, and utilities. Customer 11 had no Schedule C

business, is not familiar with Schedule C, and never provided any expenses to Sobode. Sobode's deceit helped reduce Customer 11's 2021 taxable income to $616.00, resulting in a refund of $7,691.00.

75.     Neither of Customer 11's 2020 or 2021 tax return reflect any preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customer 12**

76.     Sobode prepared tax returns for Customer 12 for the tax year 2021. Customer 12 met with Sobode at Sobode's office. Customer 12 provided Sobode with their Form W-2 and Social Security and identifying information. Customer 12 paid Sobode $150–$175 for preparing their returns.

77.     On Customer 12's 2021 Form 1040, Sobode reported their W-2 income of $36,039.00 but, included a fabricated Schedule C, which reflected a $18,317 business loss related to a "DJ" business. This "loss" included expenses for advertising, car and truck expenses, utilities, office expenses, and other unspecified expenses. Although Customer 12 told Sobode about his "side business," Customer 12 stated he "did minimum work" as a DJ and did not advertise. Customer 12 never provided Sobode with any expenses and was unaware that Sobode had included them on their tax return. Sobode's fabrications helped reduce Customer 12's 2021 taxable income to $4,872.00, resulting in a refund of $3,228.00.

78.     Customer 12's 2021 tax return reflects no preparer or firm name. Sobode prepared such return as a ghost preparer.

**Customer 13**

79.     Sobode prepared tax returns for Customer 13 for the tax years 2019, 2020, and 2021. Customer 13 met with Sobode at Sobode's office. Customer 13 provided Sobode with their Form W-2 and Social Security and identifying information. Customer 13 paid Sobode $250 for preparing their returns.

80.     On Customer 13's 2019 Form 1040, Sobode reported their W-2 income of

$112,852.00 but, included a fabricated Schedule C, which reflected a $33,843.00 business loss related to a "landscaping" business. This "loss" included expenses for advertising, car and truck expenses, utilities, offense expenses, depreciation, and other unspecified expenses. Although Customer 13 told Sobode about their "side business," Customer 13 provided Sobode with no expense amounts to justify any Schedule C loss. Sobode's fabrications helped reduce Customer 13's 2019 taxable income to $66,809.00, resulting in a refund of $8,056.00.

81.     On Customer 13's 2020 Form 1040, Sobode reported their W-2 income of $113,527.00 but, included a fabricated Schedule C, which reflected a $65,056.00 business loss related to a "landscaping" business. This "loss" included expenses for advertising, car and truck expenses, utilities, offense expenses, depreciation, and other unspecified expenses. Although Customer 13 told Sobode about their "side business," Customer 13 provided Sobode with no expense amounts to justify any Schedule C loss, much less in the amounts reported. Instead, Sobode "just filled in the amounts for expenses" without receiving any amounts from Customer 13. Sobode's fabrications helped reduce Customer 13's 2020 taxable income to $41,282.00, resulting in a refund of $19,528.00.

82.     On Customer 13's 2021 Form 1040, Sobode reported their W-2 income of $92,782.00 but, included a fabricated Schedule C, which again reflected a $48,409.00 business loss related to a "landscaping" business. This "loss" included expenses for advertising, car and truck expenses, utilities, offense expenses, and other unspecified expenses. Although Customer 13 told Sobode about their "side business," Customer 13 provided Sobode with no expense amounts to justify any Schedule C loss, much less in the amounts reported. Instead, Sobode "just filled in the amounts for expenses" without receiving any amounts from Customer 13. Sobode's fabrications helped reduce Customer 13's 2020 taxable income to $30,548.00, resulting in a refund of $10,363.00.

83.     None of Customer 13's 2019, 2020, or 2021 tax returns reflect any preparer or firm name. Sobode prepared such returns as a ghost preparer.

**Customer 14**

84.     Sobode prepared tax returns for Customer 14 for the tax years 2019 and 2020—and many other years. Customer 14 met with Sobode at Sobode's office. Sobode provided Customer 14 with a business card. Customer 14 provided Sobode with their Form W-2 and Social Security and identifying information. Customer 14 paid Sobode for preparing their returns.

85.     On Customer 14's 2019 Form 1040, Sobode reported their W-2 income of $142,202.00 but, included a fabricated Schedule C, which reflected a $59,724.00 business loss related to a "safety services" business. This "loss" included expenses for advertising, car and truck expenses, legal and professional services, utilities, offense expenses, depreciation, taxes and licenses, and other unspecified expenses. Customer 14 did not have any such business and did not provide Sobode with any expenses to justify any Schedule C and did not inquire or request that Sobode include such on any Schedule C. Sobode's fabrications helped reduce Customer 14's 2019 taxable income to $66,041.00, resulting in a refund of $12,181.00.

86.     On Customer 14's 2020 Form 1040, Sobode reported their W-2 income of $46,302.00 but, included a fabricated Schedule C, which reflected a $47,662.00 business loss related to a "safety services" business. This "loss" included expenses for advertising, car and truck expenses, utilities, offense expenses, and other unspecified expenses. Customer 14 did not have any such business and did not provide Sobode with any expenses to justify any Schedule C and did not inquire or request that Sobode include such on any Schedule C. Sobode's fabrications helped reduce Customer 14's 2020 taxable income to $16,909.00, resulting in a refund of $8,529.00.

87.     Neither of Customer 14's 2020 or 2019 tax returns reflect any firm or preparer name.

**Customers 15 and 16**

88.     Sobode prepared tax returns for Customers 15 and 16 for 2021. Customers 15 and 16 met with Sobode at Sobode's office. Customers 15 and 16 provided Sobode with their Forms W-2

and Social Security and identifying information. Customers 15 and 16 paid Sobode $250.00 in exchange for preparing their returns.

89.     On Customer 15 and 16's 2021 Form 1040, Sobode reported their W-2 income of $135,492.00 but, included a fabricated Schedule C, which reflected a $33,730.00 business loss related to a "tutoring" business. This "loss" included expenses for advertising, car and truck expenses, depreciation, insurance, legal and professional services, office expenses, supplies, taxes and licenses, utilities, and other unspecified expenses. Customers 15 and 16 tutored children of their friends sometimes, and in exchange, received $200 and "cookie and candy." However, the Customers never provided Sobode with any expenses to justify the amounts reflected in the Schedule C and were not aware that Sobode had included such. Sobode's fabrications helped reduce Customer 15 and 16's 2021 taxable income to $75,641.00, resulting in a refund of $8,430.00.

90.     Customer 16's 2021 tax return reflects no preparer or firm name.

**Customers 17 and 18**

91.     An employee of Sobode prepared tax returns for Customers 17 and 18 for the tax year 2022. Customers 17 and 18 met with the employee at the office maintained by Sobode's LLC. Sobode herself prepared Customers 17 and 18's returns in previous years. Customers 17 and 18 provided the employee with their Forms W-2 and Social Security and identifying information. Customers 17 and 18 paid Sobode's LLC $700.00 for preparing their returns.  The Customers never received a copy of their tax return.

92.     On Customer 17 and 18's 2022 Form 1040, Sobode's employee reported their W-2 income of $155,758.00 but, included a fabricated Schedule C, which reflected a $38,907.00 business loss related to a "residential" business. This "loss" included expenses for advertising, utilities, wages, and other unspecified expenses. Customers 17 and 18 never provided Sobode's employee with any expenses to justify the amounts reflected in the Schedule C and were not aware the employee had

included such expenses. Sobode's employee's fabrications helped reduce Customer 17 and 18's 2022 taxable income to $90,951.00, resulting in a refund of $32,832.00.

93.    Customer 17 and 18's 2022 tax return reflects the firm name "LAURAS FINACIAL CONSULTING SER" and a business address for Sobode's LLC. The employee's name is listed as the preparer's name.

**Customers 19 and 20**

94.    Sobode prepared a tax return for Customers 19 and 20 for the tax year 2022. Customers 19 and 20 met with Sobode at Sobode's office. Customers 19 and 20 provided the Sobode with their Forms W-2 and Social Security and identifying information. Customers 19 and 20 paid Sobode $350.00 for preparing their 2022 return.

95.    On Customer 19 and 20's 2022 Form 1040, Sobode reported their W-2 income of $172,520.00 but, included a fabricated Schedule C, which reflected a $31,124.00 business loss related to an "automotive" business. This "loss" included expenses for advertising, office expenses, utilities, wages, and other unspecified expenses. On Schedule H, Sobode also reported that Customers 19 and 20 paid $26,523.00 in household help. Sobode then reported that same amount as "wages" on Customer 19 and 20's Schedule C, which is false and appears unrelated to any "automotive" business. In truth, Customers 19 and 20 never provided Sobode with any expenses to justify the amounts reflected in the Schedule C or the household help that Sobode reported. The Customers merely told Sobode that they paid someone to clean their home "every now and then." Sobode's fabrications helped reduce the Customers' 2022 taxable income to $115,496.00, resulting in a refund of $46,271.00

96.    Customer 19 and 20's 2022 tax return reflects "LAURA SOBODE" as the preparer name and "LAURAS FINACIAL CONSULTING SER" as the firm's name.

**Customer 21**

97.    Sobode prepared a 2022 tax return for Customer 21. Customer 21 met with Sobode

in Sobode's office and provided Sobode with their Forms W-2 and Social Security and identifying information. Customer 21 paid Sobode $1,100.00 for preparing their returns.

98.     On Customer 21's 2022 Form 1040, Sobode reported their W-2 income of $130,753.00 but, included a fabricated Schedule C, which reflected a $25,647.00 business loss related to an "all other specialty" business. This "loss" included expenses for utilities, wages, and unspecified other expenses. On Schedule H, Sobode also reported that Customer 21 paid $19,637.00 in household help. Sobode then reported that same amount as "wages" on Customer 21's Schedule C, which is false. In truth, Customer 21 never provided Sobode with any expenses to justify the amounts reflected in the Schedule C or the household help expense that Sobode reported. The Customer merely told Sobode that he "paid someone to cut the grass" but, provided no facts or amounts to justify any household help expense, much less any household help expense related to a purported "all other specialty business." Sobode's fabrications helped reduce Customer 21's 2022 taxable income to $93,041.00, resulting in a refund of $31,076.00.

99.     Although Sobode prepared Customer 21's 2022 tax return, the tax return reflects a different name as the preparer's name. The return reflects "LAURAS FINACIAL CONSULTING SER" as the firm name and a firm address used by Sobode's LLC.

**Customers 22 and 23**

100.     An employee of Sobode prepared a 2022 tax return for Customers 22 and 23 at Sobode's LLC. Customers 22 and 23 provided Sobode's employee with their Forms W-2 and Social Security and identifying information. They paid $400.00 for preparing their return.

101.     On Customers 22 and 23's 2022 Form 1040, Sobode's employee reported their W-2 income of $71,738.00 but, included a fabricated Schedule C, which reflected a $29,718.00 business loss related to an "unclassified" business. This "loss" included expenses for utilities, wages, advertising, supplies, office expenses, and unspecified other expenses. On Schedule H, the employee also reported

that Customers 22 and 23 paid $24,769.00 in household help. The employee then reported that same amount as "wages" on Customer 22 and 23's Schedule C, which is false. Customers 22 and 23 never provided the employee with any expenses to justify the amounts reflected in the Schedule C or the household help that the employee reported. The Customers merely told Sobode that they "paid someone to cut the grass" and clean their home but, provided no facts or amounts to justify any household help expense, much less an expense for a purported "unclassified" business. Sobode's employee's fabrications helped reduce Customer 22 and 23's 2022 taxable income to $16,120.00, resulting in a refund of $23,831.00.

102.    Customer 22 and 23's 2022 tax return reflects the employee's name as the preparer and "LAURAS FINANCIAL CONSULTING SER" as the firm name.

**Customer 24**

103.    An employee of Sobode prepared tax returns for Customer 24 at Sobode's LLC for the tax year 2022. Customer 24 provided Sobode's employee with their Forms W-2 and Social Security and identifying information. They paid $400.00 in exchange for preparing their returns. Sobode herself prepared returns for Customer 24 in previous years.

104.    On Customer 24's 2022 Form 1040, Sobode's employee reported their W-2 income of $85,800.00 but, included a fabricated Schedule C, which reflected a $16,152.00 business loss related to a "poured concrete" business. This "loss" included expenses for utilities, wages, and unspecified other expenses. On Schedule H, the employee also reported that Customer 24 paid $18,237.00 in household help. The employee then reported that same amount as "wages" on Customer 24's Schedule C, which is false. In truth, Customer 24 never provided the employee with any expenses to justify the amounts reflected in the Schedule C or the household help that the employee reported. Customer 24 told the employee he poured concrete "in his spare time" but, that they did not make much money. Customer 24 never provided Sobode's employee with any facts to justify any household

help expense for any "poured concrete" business, and such would make little sense. Sobode's employee's fabrications helped reduce Customer 24's 2022 taxable income to $50,248.00, resulting in a refund of $22,164.00.

105.    Customer 24's 2022 tax return reflects the employee as the preparer and the firm name "LAURAS FINACIAL CONSULTING SER."

**Customers 25 and 26**

106.    Sobode prepared tax returns for Customers 25 and 26 for the tax year 2022. The Customers provided Sobode with their Forms W-2 and Social Security and identifying information. They paid $200.00 in exchange for preparing their returns. The Customers received no copy of their tax return.

107.    On Customers 26 and 27's 2022 Form 1040, Sobode reported their W-2 income of $183,594.00 but, included a fabricated Schedule C, which reflected a $86,049.00 business loss related to a "nonresidential" business. This "loss" included expenses for utilities, wages, advertising, contract labor, office expenses, and unspecified other expenses. On Schedule H, Sobode also reported that Customers 25 and 26 paid $29,485.00 in household help. Sobode then reported that same amount on Customer 25 and 26's Schedule C as "wages," which is false. In truth, the Customers never provided Sobode with any expenses to justify the amounts reflected in the Schedule C or the household help expense that Sobode reported. The Customers merely told Sobode that they pay someone to cut the grass without further details or justification, let alone any justification that the household help was related to a "nonresidential business." Sobode included such fabrications without input from Customers 25 and 26. These fabrications helped reduce Customer's 25 and 26's 2022 taxable income to $71,645.00, resulting in a refund of $53,314.00.

108.    The return reflects the firm name of "LAURAS FINACIAL CONSULTING SER."

**Customers 27 and 28**

109.     An employee of Sobode prepared a tax return for Customers 27 and 28 for the tax year 2022. Customers 27 and 28 provided the employee with their Forms W-2 and Social Security and identifying information. They paid $700.00 in exchange for preparing their return. People working at Sobode's LLC also prepared returns for Customers 27 and 28 in previous years.

110.     On Customers 28 and 29's 2022 Form 1040, Sobode's employee reported their W-2 income of $138,527.00 but, included a fabricated Schedule C, which reflected a $58,955.00 business loss related to a "nonresidential" business. This "loss" included expenses advertising, utilities, wages, and unspecified other expenses. On Schedule H, the employee also reported that Customers 27 and 28 paid $29,863.00 in household help. The employee then reported that same amount as "wages" on Customers 27 and 28's Schedule C, which is false. In truth, Customers 27 and 28 never provided the employee with any expenses to justify the amounts reflected in the Schedule C or the household help expense that the employee reported. Nor did the Customers provide any indication that any household help was related to any business. Sobode's employee included such fabrications without input from Customers 27 and 28. The employee's fabrications helped reduce Customer's 27 and 28's 2022 taxable income to $93,661.00, resulting in a refund of $34,205.00.

111.     Customer 27 and 28's 2022 tax return reflects the employee as the preparer and the firm name of "LAURAS FINACIAL CONSULTING SER."

**Customers 29**

112.     An employee of Sobode prepared a 2022 tax return for Customer 29. Customer 29 provided the employee with their Forms W-2 and Social Security and identifying information. They paid $700.00 in exchange for preparing the return.

113.     On Customer 29's 2022 Form 1040, Sobode's employee reported their W-2 income of $87,459.00 but, included a fabricated Schedule C, which reflected a $26,633.00 business loss related

to a "residential" business. This "loss" included expenses for wages and unspecified other expenses. On Schedule H, the employee also reported that Customer 29 paid $23,648.00 in household help. The employee then reported that amount as "wages" on Customer 29's Schedule C, which is false. In truth, Customer 29 never provided Sobode's employee with any records or amounts of expenses to justify the amounts reflected in the Schedule C or the household help that the employee reported. Customer 29 told the employee that a cleaning lady "c[a]me by" but, "not regular[ly]" and provided no indication that any household help was related to any business. Moreover, Sobode's employee merely asked Customer 29 if he "stored tools in [their] garage" and that such "were deductible business expenses." The employee included such fabrications without input from Customer 29. The fabrications helped reduce Customer 29's 2022 taxable income to $48,696.00, resulting in a refund of $29,259.00.

114.    Customer 29's 2022 tax return reflects the employee as the preparer and the firm name of "LAURAS FINACIAL CONSULTING SER."

## Tax Harm to the United States

115.    Defendants' repeated preparation of false tax returns has caused—and continues to cause—a substantial harm to the United States by falsely reducing customers' reported tax liabilities and falsely causing inflated refunds to which their customers are not entitled. The IRS estimates that Defendants have caused millions of dollars of tax harm to the United States over the years 2019 through 2022. This estimate is based on the IRS' interviews of customers identifying false claims on their tax returns, the number of tax returns being prepared by the Defendants claiming Schedule C business losses, and various credits, and the amounts of those claimed business losses and/or credits. Defendants' conduct further harms the United States because it forces the IRS to devote some of its limited resources to investigate and combat Defendants' abusive practice.

116.    For instance, Defendants' conduct compels the IRS to identify and examine the tax returns of Defendants' customers; determine the true tax liability owed by customers; collect any tax,

interest, and penalties owed by customers; and recover any refunds that were erroneously issued to customers, some of which may not be collectible. These activities require significant human resources and are caused directly by Defendants' deceptive practices.

117.    Defendants' conduct also harms honest, law-abiding tax-return preparers. By preparing tax returns that unlawfully inflate customer refund amounts, Defendants have gained an unfair competitive advantage over tax-return preparers who prepare returns in accordance with the law. Customers who are satisfied with the refunds that they receive but, who are unaware of Defendants' practices return to Defendants for subsequent tax seasons, thereby causing a repetitive cycle of return-preparer fraud year after year.

118.    Defendants' conduct also harms the public at large because it undermines public confidence in the administration of the federal tax system and encourages non-compliance with internal revenue laws.

## COUNT 1: Injunction under 26 U.S.C. § 7407

119.    The United States incorporates by reference the allegations in all the preceding paragraphs as though fully set forth herein.

120.    Section 7407 of the Internal Revenue Code authorizes the Court to enjoin a tax-return preparer who, among other things, engages in conduct that is subject to penalty under 26 U.S.C. §§ 6694 or 6695, or who engages in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

121.    Section 7701(a)(36) of the Internal Revenue Code defines a "tax-return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or substantial portion thereof. Defendants are tax-return preparers pursuant to § 7701(a)(36) because they prepare returns for customers in exchange for compensation. Defendants also employ others who prepare returns for customers in exchange for compensation.

122.    Section 6694(a) of the Internal Revenue Code penalizes a tax-return preparer if (1) the preparer prepared a return or claim for refund that included an understatement of liability due to a position for which there was not a realistic possibility of being sustained on the merits; (2) the preparer knew (or reasonably should have known) of such position; and (3) the position was not properly disclosed or was frivolous.

123.    "Understatement of liability" means any understatement of tax due or "overstatement of the net amount creditable or refundable." 26 U.S.C. 6694(a).

124.    In violation of section 6694(a), Defendants prepared tax returns for customers that included positions which significantly understated customers' tax liabilities by understating customers' taxable income and overstating the net amount of refund available based on tax credits, false business expenses on Schedule C, false household help expenses, and false deductions on Schedule A. Defendants knew these understated liabilities had no realistic possibility of being sustained on the merits because they knew the expenses on the customers' tax returns on which their tax liabilities were based were false. Defendants failed to disclose these fabrications to customers and to the IRS.

125.    Section 6694(b) of the Internal Revenue Code penalizes a tax-return preparer who prepares a return or claim with an understatement of liability (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

126.    In violation of section 6694(b), Defendants prepared tax returns for customers that Defendants knew or reasonably should have known understated customer's tax liabilities by: (1) manipulating Schedule C through reporting entirely fabricated business expenses; (2) claiming false or inflated tax credits; (3) reporting false or inflated itemized deductions on Schedule A; and (4) reporting false household help expense.  Many of the fabricated amounts reflect Defendants' willfulness or at least reckless disregard for their truth because the amounts reported are unreasonable in proportion to the wage income from those customers' W-2s.

127.    In violation of Section 6695(b) and 6695(c), Sobode, on many occasions, prepared tax returns for customers but, willfully failed to sign those returns and instead acted as a ghost preparer. Sobode further, on many occasions, failed to furnish her PTINs on those returns. Sobode willfully failed to sign such returns and failed to furnish their PTINS in an attempt to undercut the IRS' ability to associate the returns and their fabrications with Sobode or her business.

128.    Additionally, under 26 U.S.C. § 7407, should the Court find that a return preparer has continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if the Court further finds that a narrower injunction prohibiting only the enumerated conduct would be insufficient to prevent further interference with the proper administration of the internal revenue laws, then the Court may enjoin that person from further acting as a federal income tax-return preparer.

129.    Given the variety, duration, and duplicity of Defendants' preparation activities, and given that lesser sanctions, such as penalties, are unlikely to deter Defendants' deleterious conduct, anything less than a permanent injunction and complete bar on the preparation of tax returns is unlikely to stop the Defendants from continuing to interfere with the administration of the internal revenue laws.

### COUNT 2: Injunction under 26 U.S.C. § 7408

130.    The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

131.    Section 7408 of the Internal Revenue Code authorizes the Court to enjoin any person from engaging in conduct subject to penalty under section 6701 of the Internal Revenue Code (among other sections) if injunctive relief is appropriate to prevent the recurrence of such conduct.

132.    Section 6701 of the Internal Revenue Code penalizes any person who aids or assists in the preparation or presentation of a federal tax return knowing (or having reason to believe) that

the filed return would result in an understatement of tax liability.

133.    Defendants prepare federal tax returns for customers that they know (or have reason to believe) will be filed with the IRS and that they know will understate their customers' tax liabilities because Defendants knowingly prepares returns that claim false or inflated deductions or credits. Moreover, to the extent that Defendants claim the customers provided the amounts that underly the fabrications in their returns (i.e., the fabricated amounts in various Schedule C and H and for various tax credits), Defendants would still be liable given they would have had reason to believe such amounts were false in light of the large amounts being claimed relative to the customers' known wages. Defendants' conduct is therefore subject to penalty under 26 U.S.C. § 6701.

134.    If the Court does not enjoin Defendants, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. Defendants' preparation of returns claiming fabricated deductions and credits has been continuing for several years and is widespread over many customers.

135.    Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**COUNT 3: Injunction 26 U.S.C. § 7402(a)**

136.    The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

137.    Section 7402(a) of the Internal Revenue Code authorizes the Court to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws. The section, moreover, expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws. 26 U.S.C. § 7402(a).

138.    Defendants' conduct described throughout this Complaint substantially interferes with the enforcement of the internal revenue laws because Defendants prepare and file numerous false tax returns that result in customers not paying their true federal tax liabilities and receiving tax refunds to

which they are not entitled.

139.    Defendants' conduct proves that Defendants should not be allowed to continue to prepare tax returns or operate a tax preparation business because they have deliberately played the audit lottery on behalf of their customers. By manipulating expenses on Schedule C, inflating expenses on Schedule A, and abusing tax credits, Defendants have selected schemes the IRS can detect only by auditing returns or interviewing customers. Because Defendants know the IRS lacks the resources to audit every return that includes these schedules, Defendants are actively subverting the American tax system, which relies on taxpayers to self-report their income and expenses accurately.

140.    The gravity of Defendants' conduct is amplified through Sobode's "ghost" tax preparation activities—steps taken to clearly subvert the IRS' investigative efforts.

141.    An injunction prohibiting Defendants from preparing or helping prepare tax returns is necessary to stop them from preparing and filing false tax returns and to prohibit them from otherwise interfering with the proper administration and enforcement of the internal revenue laws, now and in the future.

142.    If Defendants are not enjoined, the United States will suffer irreparable harm from the underpaying of taxes and the exhaustion of resources to enforce the internal revenue laws.

143.    By contrast, Defendants will not suffer any cognizable harm by being enjoined from acting as a tax-return preparer given that, when acting as a return preparer, they prepare returns that harm the United States.

144.    The public interest would be advanced by enjoining Defendants because an injunction will stop their illegal conduct and the harm the conduct is causing the United States treasury and the public. An injunction under 26 U.S.C. § 7402 is necessary and appropriate because the United States has no adequate remedy at law.

## Prayer

Accordingly, the United States is entitled under the law to an order that:

A.      Finds that Defendants have continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) and (b) and continually or repeatedly engaged in fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws under 26 U.S.C. § 7407;

B.      Finds that injunctive relief under 26 U.S.C. § 7407 is appropriate to prevent the recurrence of such conduct and that a narrower injunction prohibiting only this specific misconduct would be insufficient to prevent Defendants' interference with the proper administration of the internal revenue laws;

C.      Finds that Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent the recurrence of such conduct;

D.      Finds that Defendants have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws and that injunctive relief is necessary and appropriate to prevent the recurrence of such conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402;

E.      Enters, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, a permanent injunction prohibiting Defendants, and all those in active concert or participation with them, from:

1.  Acting as a federal tax-return preparer, or assisting in or directing the preparation or filing of federal tax returns (including, amended returns) or other related documents or forms from any person or entity other than themselves;

2.  Assisting or advising anyone in connection with any tax matter;

3.  Having an ownership interest in, working for (either as an employee or independent contractor), assisting, investing in, receiving fees or remunerations from, controlling, licensing, consulting with, or franchising any entity or business that prepares tax returns or represents clients before the Internal Revenue Service;

4.  Using, maintaining, renewing, or obtaining any Preparer Tax Identification Numbers (PTINs) and Electronic Filing Identification Numbers (EFINs);

5.  Training, advising, counseling, instructing, or teaching anyone about the preparation of federal tax returns;

6.  Referring any person to a tax preparation firm or to a tax-return preparer, or otherwise suggesting that a taxpayer use any given tax preparation firm or tax-return preparer;

7.  Except as provided by paragraph F below, selling, providing access, or otherwise transferring to any person or entity a list of tax preparation customers that Defendant generated by her tax-return preparation activities;

8.  Collecting or gathering Forms W-2 and Forms 1099 from taxpayers or from customers who want to have their federal income tax returns prepared;

9.  Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the Internal Revenue Service;

10. Working in the same office or office suite that also contains any part of a business whose activity at that office or office suite is to file, prepare, advise, or assist in the preparation of documents relating to a matter material to internal revenue laws, including, federal tax returns, amended federal tax returns, and related documents, for any person for compensation;

11. Engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other section of the Internal Revenue Code; and

12. Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.       Requires, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, Defendants, within 30-days of receiving the Court's order, to contact by U.S. mail and, if an email address is known, by email, all persons for whom Defendants prepared federal tax returns, amended returns, or claims for refund for the tax years 2018 through 2023, and to inform them of any permanent injunction entered against them by sending each of them a copy of the order of any permanent injunction,

G.       Requires Defendants to, within 45-days of any injunction order, file with the Court a declaration stating that paragraphs F, G, H, I, J, and K of this section have been completed;

H.       Requires Defendants to disclose and surrender to the Secretary of Treasury or her delegate any and all PTINs held by, assigned to, or used by Defendants pursuant to 26 U.S.C. § 6109, and the EFINs held by, assigned to, or used by Defendants;

I.       Requires, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, Defendants, within 30-days of receiving the Court's order, to produce to counsel for the United States a list that identifies by name, Social Security number, address, email address (if known), telephone number, and tax period, all persons for whom Defendants prepared federal tax returns, amended returns, or claims for refund for the tax years 2019–2023, and 2024, if any;

35

J.      Requires Defendants to prominently post a copy of any injunction order entered in this case at Defendants' place(s) of business, and prominently post for one year, on all social media accounts and websites used to advertise Defendants' tax-preparation services, a statement that they have been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the injunction order that the Department of Justice may issue;

K.      Requires Defendants to deliver a copy of any injunction order to Defendants' employees, contractors, franchisees, and vendors;

L.      Retains jurisdiction over this action to enforce any permanent injunction entered against Defendants;

M.      Orders that the United States be entitled to conduct discovery to monitor Defendants' compliance with the terms of any permanent injunction entered against them;

N.      Requires Defendants, at their own expense, to keep records of their compliance with the foregoing directives, which may be produced to the Court if requested, or to the United States at its request pursuant to paragraph L above; and

O.      Grants the United States such other relief, including, costs, as is just and proper.

Dated: February 13, 2025                    Respectfully submitted,

                                            **DAVID A. HUBBERT**
                                            Deputy Assistant Attorney General

                                            */s/ Eduardo R. Mendoza*
                                            Eduardo R. Mendoza
                                            Trial Attorney
                                            State Bar No. 24096680
                                            SDTX No. 3838770
                                            U.S. Department of Justice, Tax Division
                                            1700 Pacific Avenue, Ste 3700
                                            Dallas, Texas 75201
                                            214.880.9735
                                            Eduardo.Mendoza@usdoj.gov

                                            **Counsel for Plaintiff**
                                            **United States of America**