IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-629 |
| | ) | |
| v. | ) | |
| | ) | |
| LAURA'S FINANCIAL CONSULTING | ) | |
| SERVICES LLC and LAURA SOBODE | ) | |
| individually and doing business as LAURA'S | ) | |
| EXCELLENTE TAX SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**UNITED STATES' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

**Memorandum** ........................................................................................................ 2

**I.    Statement of Facts** ........................................................................................ 3

   A.    Phony Business and Business Expenses Reported on Forms Schedule C ......................... 5

   B.    Earned Income Tax Credit Fraud and Failure to Comply with Due Diligence
      Requirements .......................................................................................... 11

   C.    False Deductions Reported on Form Schedule A ............................................... 12

   D.    False Education Credits .............................................................................. 12

   E.    False Household Employee Wages Reported on Form Schedule H ............................. 13

   F.    Failing to Identify the Actual Paid Preparer of Tax Returns ................................. 13

   G.    Failing to Review Tax Returns and Disclose Information to Customers ....................... 14

   H.    Excessive and Often Undisclosed Tax Preparation and Related Fees .......................... 14

**II.   Standard of Review** ....................................................................................... 15

**III.  Argument** ................................................................................................... 16

A.    The Statutory Elements for Injunctive Relief under §§ 7407 and 7408 are Satisfied ........ 17

   1.    The Defendants' Conduct Warrants an Injunction Under 26 U.S.C. § 7407 ................. 17

      a.    The Defendants Repeatedly and Continually Violate §§ 6694 and 6695 and
         Engage in Other Fraudulent or Deceptive Conduct..…………..……………….....17

      b.    A Narrower Injunction Will Not Suffice…………………………………………...18

   2.    The Defendants' Continual and Repeated Violations of 26 U.S.C. § 6701
      Warrant Injunctive Relief Under 26 U.S.C. § 7408……………………....…………19

B.    The Defendants' Conduct Interferes with the Enforcement of the Internal Revenue
   Laws and Supports Injunctive Relief Under 26 U.S.C. § 7402.. ....................................... 20

C.    The Equitable Factors Support Entry of a TRO and a Preliminary Injunction................... 22

   1.    There is a Substantial Likelihood of Success on the Merits ................................... 22

   2.    The United States and the Public will Suffer Irreparable Harm if a TRO and
      Preliminary Injunction is Not Issued ............................................................ 23

   3.    The Injury to the United States and the Public Outweighs the Harm Caused
      to the Defendants by Enjoining them from Preparing Tax Returns............................ 24

   4.    A TRO and Preliminary Injunction will Benefit the Public Interest .......................... 24

**IV.   Conclusion** .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brody v. United States*, 243 F.2d 378 (1st Cir. 1957)....................................................21

*Ruiz v. Estelle*, 650 F.2d 555 (5th Cir.1981)..............................................................22

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005)..........................22

*Sierra Club v. Fed. Deposit Ins. Corp.*, 992 F.2d 545 (5th Cir. 1993)..........................15

*United States v. Ajak*, 765 F. Supp. 3d 552 (N.D. Tex. 2025) .......................15, 17, 18, 20, 21, 24

*United States v. Ajak*, 2025 WL 452415 (N.D. Tex. Jan. 23, 2025) .............................16

*United States v. Buddhu*, 2009 WL 1346607 (D. Conn. 2009) ....................................24

*United States v. Ernst & Whinney*, 735 F.2d 1196 (11th Cir. 1984) .............................21

*United States v. Espinal*, 2021 WL 3666323, at *4 (S.D. Fla. Aug. 18, 2021) ............18

*United States v. Franchi*, 756 F. Supp. 889 (W.D. Pa. 1991)......................................21

*United States v. Harden*, 2018 WL 6982144 (M.D. Fla. 2018)....................................16

*United States v. Kaun*, 827 F.2d 1144 (7th Cir. 1987)............................................19, 23

*United States v. Marc*, 2019 WL 11502800 (M.D. Fla. 2019) ....................................16

*United States v. Marc*, 2020 WL 6064793, *9, *report and recommendation adopted*, 2020 WL 5542819 (M.D. Fla. 2020) ...........................................24

*United States v. Music Masters, Ltd.*, 621 F. Supp. 1046 (W.D.N.C. 1985)................23

*United States v. Ogbazion*, 2012 WL 4364306 (S.D. Ohio 2012)..................................3

*United States v. Pugh*, 717 F. Supp. 2d 271 (E.D. N.Y. 2010)................................21, 24

*United States v. Reddy*, 500 F. Supp. 2d 877, 882 (N.D. Ill. 2007)..............................19

*United States v. Renfrow*, 612 F.Supp.2d 677 (E.D. N.C. 2009)..................................21

*United States v. Saint-Hilaire*, 2024 WL 2871773 (S.D. Fla. 2024)........................16, 24

*United States v. Savoie*, 594 F.Supp. 678 (W.D. La. 1984)........................................23

*United States v. Stinson*, 2016 WL 7426582 (M.D. Fla. 2016), *aff'd*, 661 F. App'x 945................................................................................................................16, 18

*United States v. Stinson*, 239 F.Supp.3d 1299 (M.D. Fla. 2017).................................17, 18, 20, 21

*United States v. Stinson*, 661 F. App'x 945 (11th Cir. 2016) .........................................15

*United States v. Umbrella Fin. Servs.,* 715 F.Supp.3d 967 (N.D. Tex. 2024).......13, 16, 18, 21, 22

*United States v. Venie*, 691 F.Supp. 834 (M.D. Pa. 1988)................................................22

*Warner v. United States*, 726 F.Supp. 1287, 1290 (S.D. Fla. 1989) ..............................20

*United States v. Warden*, 545 F.2d 32 (7th Cir. 1976)....................................................20

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ........................................................16

*Warner v. United States*, 726 F.Supp. 1287 (S.D. Fla. 1989).........................................20

**Statutes**

26 U.S.C. § 32 ...................................................................................................................11

26 U.S.C. § 6109(a)(4) ......................................................................................................18

26 U.S.C. § 6694 ...............................................................................................................17

26 U.S.C. §§ 6694(a) and (b)......................................................................................17, 22

26 U.S.C. §§ 6695(b) and (c)............................................................................................14

26 U.S.C. § 6695(c) ...........................................................................................................18

26 U.S.C. § 6695(g)................................................................................................11, 17, 18

26 U.S.C. § 6701 .....................................................................................................19, 20, 22

26 U.S.C. § 7402 .............................................................................................16, 20, 21, 22

26 U.S.C. §§ 7402, 7407, and 7408 .................................................................................16

26 U.S.C. § 7402(a) ...........................................................................................................20

26 U.S.C. § 7407 .............................................................................................17, 18, 21, 22

26 U.S.C. § 7407(b)(1) ......................................................................................................17

26 U.S.C. § 7407(b)(2) ......................................................................................................17

26 U.S.C. § 7408 .............................................................................................19, 20, 21, 22

Families First Coronavirus Response Act, Public Law 116-127, 134 Stat 178............................13

**Other Authorities**

26 C.F.R. § 1.6995-2............................................................................................................11

Fed.R.Civ.P. 43(c) ............................................................................................................16

Fed.R.Civ. P. 65(a) ............................................................................................................1

The United States moves for a temporary restraining order ("TRO") and a preliminary injunction that 1) bars Laura's Financial Consulting Services LLC and its owner, Laura Sobode, which do business as Laura's Excellente Tax Service ("the Defendants"), from preparing or assisting with, advising, or directing the preparation of federal tax returns for others, including causing other individuals or entities to prepare tax returns or in any manner (directly, indirectly, overtly, or covertly) being involved with tax preparation for others; 2) bars the Defendants from owning, investing in, or receiving fees or income from tax preparation; 3) bars the Defendants from assigning or selling a customer list or proprietary information pertaining to their tax preparation; and 4) orders the Defendants to immediately close all tax preparation stores that they own or operate until such time as the Court may order otherwise. *See* Fed. R. Civ. P. 65(a). We seek immediate injunctive relief to prevent the Defendants from preparing tax returns in 2026 making false claims and requesting hundreds of thousands, if not millions, of dollars in bogus tax refunds that the United States can never recover in full.

A TRO is necessary to preserve the status quo until notice is given (here, through ECF) and an opportunity is afforded to the Defendants to respond to the motion for a preliminary injunction.[1] A TRO protects the public's interests until a hearing may be held.[2] The Defendants cannot be allowed to engage in further tax return preparation because their practices harm the

[1] To be clear, the Defendants will receive notice of this motion at the time it is filed through ECF and receive notice of any order at the time it is filed through ECF. Thus, the provisions of Fed.R.Civ.P. 65(b)(1) regarding issuing a TRO without notice are not implicated here. The purpose of the TRO is to protect the imminent irreparable injury that will occur from the Defendants preparing tax returns before the Defendants have an opportunity to be heard on the motion for preliminary injunction.

[2] If the Court plans to hold an evidentiary hearing on this motion, we request that the Court contact all parties to schedule a hearing date and to discuss the amount of court time that will be necessary. If the Court desires testimony, the parties will likely call (and may first need to serve subpoenas on) several witnesses, including customers of the Defendants' tax preparation business and Sobode. However, an evidentiary hearing is not required. *See Sierra Club v. Fed. Deposit Ins. Corp.*, 992 F.2d 545, 551 (5th Cir. 1993); *United States v. Umbrella Fin. Servs., LLC*, 715 F.Supp.3d 967, 972 (N.D. Tex. 2024).

government and public.  The Defendants, who possess customer information related to the thousands of tax returns they have collectively prepared, cannot be allowed to engage in any tax-related business activity that may result in the transfer of capital or proprietary information (such as customer information) to other return preparers, as this would enable others to perpetuate the Defendants' misconduct.  Most importantly, a TRO is necessary to protect the interests of the public (the Defendants' customers and potential customers) and the public fisc (harm for which the government has no adequate legal remedy). **Tax returns can be filed beginning January 26, 2026**.  Thus, the threat of irreparable injury is imminent, and absent a TRO, the Defendants can continue to prepare (or assist others in preparing) tax returns making false claims.

The Defendants' practices show an intentional disregard of the law and demonstrate the need for a TRO and a preliminary injunction. The Defendants' repeated and widespread misconduct shows that only an order, backed by the Court's contempt powers, can stop the misconduct. As discussed below, the government is likely to succeed on the merits. The repeated widespread false claims – primarily phony business losses commonly for tens of thousands of dollars *or more* on Forms Schedule C – and the theft of substantial portions of customers' tax refunds (which should never have been issued) illustrate the need for immediate injunctive relief.

Pursuant to LR 7.1, on January 5, 2026, government counsel emailed a proposed stipulation and proposed order of preliminary injunction to the Defendants' counsel. On January 16, 2026, the Defendants' counsel emailed that the Defendants do "not want to move forward with a stipulated agreement concerning the preliminary injunction." (Applegate Decl. ¶ 2.)

## MEMORANDUM

The Defendants prepare tax returns that create large—but false—tax refunds through fabricated income, expenses, deductions, and credits. Higher refunds lead to more customers and

2

more harm to the government.  The Defendants withdraw excessive (and often undisclosed) tax preparation fees directly from the bogus tax refunds. Thus, the Defendants profit at the expense of their customers (whom they knowingly place at risk of audit or other liability) and the government (which pays their preparation fees through bogus tax refunds that should never be issued). The Defendants prepare and file false tax returns on which they:

- claim, on Forms Schedule C, false business expenses for thousands (or tens of thousands) of dollars (to reduce or eliminate the customers' taxable income, often in connection with claiming the EITC);

- claim, on Forms Schedule A, false itemized deductions, including for fabricated medical expenses and home mortgage interest payments;

- claim false education credits for customers who did not attend college or did not otherwise incur any education-related expenses, or falsely inflated expenses for customers who did attend college;

- claim, on Forms Schedule H, phony wages paid to non-existent household employees.

A TRO and preliminary injunction preventing the Defendants from preparing tax returns in 2026 is appropriate and necessary to prevent further misconduct and harm to the public. The United States brings this motion "pursuant to its statutory mandate to protect the public and the Treasury." *See United States v. Ogbazion*, 2012 WL 4364306, *3 (S.D. Ohio 2012).

## I.  Statement of Facts

Laura Sobode ("Sobode") prepared tax returns for others since at least 2016,[3] and she incorporated Laura's Financial Consulting Services LLC (hereinafter "Laura's") in Texas in 2017. (Vazquez Decl. at ¶ 6; ECF No. 1, Compl. ¶¶ 5-6 and ECF No. 12, Ans. ¶¶ 5-6.)  The Defendants operate a tax preparation store in Houston, Texas, including under the name Laura's Excellente Tax Service. (Compl. ¶ 6 and Ans. ¶ 6; Toliver Dep. 9:20-24.)  The Defendants

---

[3] According to Sobode, she has been a tax preparer since 2006. (ECF No. 12, Ans. at ¶ 6.)

employ one or more persons to prepare tax returns for compensation. (Vazquez Decl. at ¶ 11.)

The Defendants provide minimal, if any, training to employees on how to properly prepare a tax return. (Toliver Dep. at 6:13-7:2, 7:9-18, 8:3-9:24, 20:4-21:16.) Employees have no specialized education or training before working for the Defendants. (*Id*. at 6:13-7:2, 7:9-18, 8:3-9:24.) Sobode claims that if an employee needed help preparing a tax return, she instructs them. (Vazquez Decl. at ¶ 11.) Sobode oversees the tax preparers she employs and handles all of the finances of Laura's Financial Consulting Services LLC, including collecting tax preparation fees. (Toliver Dep. at 14:1-13, 16:21-17:21, 23:1-3, 24:21-25:9, 29:1-19, 38:9-20, 38:25-39:11; Rossy Blanco Dep. at 7:19-8:3, 9:13-11:3, 11:10-22, 12:9-25, 13:5-19, 13:24-14:8, 14:21-17:7, 20:7-18, 21:3-5, 24:10-26:24, 27:4-6, 27:13-28:5.)

Sobode and her employees often do not properly identify themselves as the paid preparer of tax returns that they prepared by reporting individual IRS-issued Preparer Tax Identification Numbers (PTINs), and Laura's does not properly identify itself as the paid preparation firm by reporting an Employer Identification Number (EIN), on the tax returns. (Vazquez Decl. at ¶¶ 7-9; Toliver Dep. at 57:21-58:24.)  Prior to 2023, Sobode required customers to sign up and pay for a TaxAct account, which is a software used to self-prepare a tax return and is not for use by professional tax preparers.  (Vazquez Decl. at ¶¶ 12-13; Toliver Dep. at 57:21-58:24.) This software does not even allow a professional tax return preparer to enter their identifying information. (Toliver Dep. at 57:21-58:24.)

Thus, it is likely impossible to identify *all* tax returns that Sobode has personally prepared.  Since 2023, tax returns that the Defendants file with the IRS are filed with Electronic Filing Identification Numbers (EFINs) assigned by the IRS.  (Vazquez Decl. at ¶ 21.)  However, even since 2023, customers have identified Sobode as the preparer of their tax returns, even

though the tax return identifies another individual as the paid preparer. *See* Lofgren, *infra*.

In 2021, the IRS assessed $15,000 in penalties against Sobode under 26 U.S.C. § 6694(b), which penalizes a tax return preparer for understating a tax liability due to willful or reckless conduct, for tax year 2017, 2018, and 2019 tax returns. (Vazquez Decl. at ¶ 20.) These penalties had no effect on the Defendants' preparation of false or fraudulent tax returns.

### A.  Phony Business and Business Expenses Reported on Forms Schedule C.

The Defendants have prepared many tax returns claiming on a Form Schedule C ("Profit or Loss from Business (Sole Proprietorship)") false businesses and/or tens of thousands of dollars of false business expenses. These claimed expenses, including many false claims on tax returns prepared in 2025 *after this lawsuit was filed* claiming that the customers' self-employed businesses lost over $100,000, are, on their face, implausible (to put it mildly). Falsely reporting these expenses improperly reduces customers' taxable income, often increases the claimed EITC, and generates larger, bogus refunds. (Vazquez Decl. at ¶¶ 23-24.)

The Defendants' customers are primarily wage earners, and the phony expenses reduce or offset wage income. Customers who gave sworn statements or testified at depositions confirmed that purported business expenses reported on the Schedules C attached to their tax returns were false. Many customers did not have a business, but the Defendants reported a business and business expenses (and, for some, business income) on their returns. (*See, e.g.*, Denton Aff. at 4:9-6:7, Exs. 37-40; Canas Dep. at 14:20-25, 24:2-7, 30:23-31:1, Exs. 1-2; Carrizalez Dep. at 13:21-14:6, Exs. 7-9; Benitez Dep. at 19:23-20:14, 21:19-22:2, Ex. 4; Medina Dep. at 8:22-9:3, Ex. 11; Martinez Complaint to IRS, Ex. 21.)  Sobode instructed customers to register a non-existent business with the state without explaining why, other than to say it would help with their tax return. (Denton Aff. at 5:25-6:10; Cummings Dep. at 29:16-30:15, 35:12-20; Carrizalez Dep.

at 12:16-13:17, 20:4-13; Rice Decl. ¶ 5.) Even for customers who are self-employed, Defendants

improperly claim falsely exaggerated expenses. *See*, *e.g.*, Pynes, Lofgren, and Brister.

The number of tax returns that the Defendants prepared reporting that customers

purportedly own a business that lost tens of thousands of dollars is astonishing. The following

chart shows the number of returns that the Defendants prepared claiming losses on Schedules C

in 2022, 2023, 2024, and 2025:

| Processing Year | Total Number of Returns | Number of Returns with a Schedule C Loss | Number of Returns with a Schedule C Loss Greater Than $4,000 | Number of Returns with a Schedule C Loss Greater Than $10,000 | Number of Returns with a Schedule C Loss Greater Than $50,000 |
|---|---|---|---|---|---|
| 2025 | 506 | 459 | 456 | 446 | 230 |
| 2024 | 667 | 575 | 570 | 506 | 200 |
| 2023 | 1,426 | 1,170 | 1,125 | 1,012 | 150 |
| 2022 [4] | 1,485 | 1,224 | 1,208 | 1,171 | 344 |

(Vazquez Decl. at ¶ 25.)

The Defendants' claims of bogus Schedule C business expenses to falsely reduce

customers' reported income, and thereby increase the claimed refund, are widespread. It defies

logic and credibility that so many of the Defendants' customers purportedly owned businesses

that lost tens of thousands of dollars. As Randy Brister repeated when shown his 2024 tax return

falsely reporting that he incurred $144,773 in expenses and lost $112,187 through a pressure

washing business, "That's pretty crazy. That's pretty crazy." (Brister Aff. at 14:19-15:2.)

The following examples highlight the brazenness of the Defendants' misconduct,

including after this lawsuit was filed. Laura's prepared Zach Denton's 2022 and 2024 tax returns.

Denton worked as a linesman and did not own a business. (Denton Aff. at 4:9-6:7.) Sobode,

however, told Denton that he should get a "d/b/a" (i.e. register a business name with the state)

---

[4] These returns were filed using the IP address through which the Defendants filed tax returns in 2022, as the Defendants acted as "ghost preparers" in 2022. The same pattern is readily apparent, though, from these returns as from those in later years on which Defendants identified themselves as the preparers.

because, according to Sobode, "it helps in benefits of your tax return." (*Id*. at 5:25-6:10.)

The preparer falsely claimed on the Schedule C attached to Denton's 2022 tax return that Denton owned a construction business that earned $32,863, but incurred $75,999 in expenses, resulting in a phony claimed loss of $43,136. (*See* Ex. 37 p. 12.)  Denton did not provide this false information and did not know it was reported on his return. (Denton Aff. at 10:14-11:17.) The preparer also falsely claimed on the Schedule H attached to the return that Denton paid a household employee $28,173 in wages, including $27,373 in qualified sick and family leave wages. (*Id*. at 11:18-12:13; Ex. 37 p. 14.) This resulted in the preparer claiming another false deduction in the amount of $27,373 on Denton's 2022 tax return to improperly decrease the reported taxable income. (*See* Ex. 37, p. 5 Form 1040 Line 31 and Schedule H.)

Denton paid Sobode around $900, including a tip, at the time his 2022 return was prepared. Sobode did not tell him that an additional tax preparation fee of $4,799 would be taken from his refund (Denton Aff. at 9:16-10:13, Ex. 37 p. 26.) Denton did not receive the refund claimed on his return. Instead, he received a letter from the IRS saying he owed money. (*Id*. at 6:16-8:10.) Sobode attempted to do an amendment, and her employee prepared another amended return. Sobode falsely told Denton that the problem was due to a change in the tax law and that he would not be charged for the amendment. (*Id*. at 19:23-20:15.)  The amended returns still claimed a bogus refund, which would enable Sobode take her undisclosed fee, and the amendments only sought to remove the bogus Schedule H household employee wages and not the fake Schedule C. (*Id*. at 9:4-15, 12:14-15:16; Ex. 38 p.3 and Ex. 39 p. 2.)

On Denton's 2024 tax return, the preparer falsely claimed that Denton owned a construction business that earned $25,805, but incurred $152,113 in expenses, resulting in an astounding phony claimed loss of $126,308. (*Id*. at 15:24-16:1, 16:25-19:22; Ex. 40 p. 18.) The

7

preparer also claimed bogus depreciation on a car Denton bought for personal, not business, use. (*Id*. at 17:14-18:25.) Denton did not provide this false information and did not know it was reported on his return. (*Id*. at 15:24-16:1, 17:1-18:25, 19:7-22.) Denton does not know if he was charged more than just the fee he paid at the time the 2024 return was prepared. (*Id*. at 21:4-16.)

Laura's prepared Josh Pynes' 2022, 2023, and 2024 tax returns. (Pynes Aff. at 3:9-18.) Pynes worked as a linesman and operated his own business repairing powerlines. (*Id*. at 3:24-5:24.) Pynes incurred some expenses for his business. (*Id*. at 6:19-7:16, 8:7-16, 8:22-9:16.) Pynes estimated he lost maybe $20,000 annually trying to get his business up and running and gave the preparer forms showing his receipts. (*Id*. at 8:22-9:25.) The preparers did not ask Pynes many questions and did not explain what they reported on his returns. (*Id*. at 10:1-11:2, 11:9-12:8.) Pynes paid around $700 at the time each return was prepared. (*Id*. at 12:9-18.)

The preparer falsely claimed on Pynes' 2024 tax return that his business earned $17,658, but incurred $120,643 in expenses, resulting in a phony loss of an incredible $102,986. (Ex. 32 p. 20.) None of these amounts are accurate; Pynes did not provide them to the preparer and did not know this was reported on his return. (Pynes Aff. at 12:25-13:9, 13:18-14:16, 16:4-18:2.) The preparer told Pynes that a "bank fee" would be taken from his refund, but did not tell him that an additional $1,773.75 tax preparation fee would be taken. (*Id*. at 18:3-25; Ex. 33.)

The preparer falsely claimed on Pynes 2023 tax return that his business earned $12,634, but incurred $99,852 in expenses, resulting in a phony loss of $87,218. (Ex. 34 p. 18.) None of these amounts are accurate; Pynes did not provide them to the preparer and did not know this was reported on his return. (Pynes Aff. at 19:1-18, 20:1-10.) The preparer did not tell Pynes that an additional $1,500 tax preparation fee would be taken from his refund. (*Id*. at 20:11-21, Ex. 35.) Similarly, the preparer did not tell Pynes that for his 2022 tax return, an additional tax

preparation fee of $4,799 would be taken from his refund. (*Id*. at 20:22-22:1, Ex. 36 p. 23.)

Laura's prepared Chad and Elissa Lofgren's 2022 and 2024 tax returns. Sobode prepared one of the tax returns herself. (Lofgren Aff. at 4:9-5:3, 5:19-6:12, 21:1-3.) Lofgren had a landscaping business these years, but the preparers never asked him for documentation showing income or expenses. (*Id*. at 7:1-8:24.) The Lofgrens told the preparers about the business and the *types* of expenses, but the preparers did not ask for specific amounts or even estimates of the expenses. (*Id*. at 9:13-18, 9:20-22, 9:25-11:10, 12:19-25.) Lofgren operates the business to make money, but it usually breaks even or loses "a little bit." (*Id*. at 11:8-15.) He would not operate the business if it was losing thousands of dollars each year. (*Id*. at 12:4-17.)

The preparer falsely reported on Lofgren's 2024 tax return, prepared on March 18, 2025, after this lawsuit was filed, that his landscaping business earned $31,273 (an amount that is "too high"), but incurred $184,662 in expenses, resulting in a phony loss of an astronomical and infeasible $153,389. (*Id*. at 13:21-25, 15:16-21, 17:5-19:8, 19:15-20:14; Ex. 43 p. 13.) The preparer did not show this to the Lofgrens. (*Id*. at 21:9-14.)

Sobode prepared the Lofgrens' 2022 return. (*Id*. at 20:15-22:8.) Sobode falsely reported that Lofgren's landscaping business earned $26,995, but incurred $47,343 in expenses, resulting in a phony claimed loss of $20,348. (*Id*. at 23:17-25:5, 25:10-26:3, 26:10-12; Ex. 44 p. 23.) The Lofgrens did not provide these phony numbers to Sobode. (*Id*. at 24:11-21, 25:1-5, 26:10-12.) Sobode also falsely reported that the Lofgrens had a household employee whom they paid $16,989 in wages. (*Id*. at 22:9-23:16; Ex. 44 p. 27.) Sobode thereby claimed a false deduction on the Schedule H attached to the Lofgrens' 2022 tax return to improperly decrease the reported taxable income. (*See* Ex. 44 p.2 Form 1040 Line 31 and Schedule H.) The Defendants never showed the Lofgrens what was claimed on their tax returns. (Lofgren Aff. at 14:8-15.)

Lofgren noticed that the refunds received from Laura's-prepared returns were "a good amount more than I got other places." (*Id*. at 6:1-7.) But the Lofgrens did not know that the Defendants subtracted undisclosed fees from their 2024 refund. The Lofgrens paid a fee up front of around $450, and did not realize until later that the Defendants took approximately $2,000 in additional fees, including a $1,773.75 tax preparation fee, from the refund. (*Id*. at 13:1-20, 15:25-16:15, 26:13-27:13; Elyssa Lofgren Aff.[5] at 14:20-22, 16:20-25; Ex. 43 p. 39.)

Sobode prepared Michael and Tammi Rice's 2021 tax return. (Rice Decl. ¶ 2.)  Sobode failed to properly identify herself and her business as the paid preparer. (Ex. 17 at p. 2.) The Rices were employed at San Jacinto College and provided some tutoring services outside of their employment. (Rice Decl. ¶ 3.) The Rices received a few hundred dollars and some gifts in exchange for tutoring. (Rice Decl. ¶ 4.) Sobode asked minimal questions about the tutoring work. (Rice Decl. ¶ 4.)  Sobode advised Rice to set up a "d/b/a" for the tutoring business without explaining why that was necessary. (Rice Decl. ¶ 5.)  Sobode falsely reported on the Schedule C that Tammi Rice earned $16,849 through a tutoring business and incurred $50,579 in expenses (including for depreciation of a vehicle, legal and professional fees, utilities, supplies, insurance, and advertising) related to that business. (Rice Decl. ¶ 6, Ex. 17 p. 22.)  The Rices did not lose $33,730 through a business and did not provide this information to Sobode. (Rice Decl. ¶ 6.)

Laura's prepared Malinda Gilbert's 2024 tax return on March 14, 2025, after this lawsuit was filed. Outside of her employment, Gilbert began selling items through Amazon. Gilbert told the preparer about the business and provided her with receipts for the business. (Gilbert Aff. at 4:12-12:13.) In response to Gilbert's description of the start-up expenses, the preparer told Gilbert: "that's cheap in order to start." (*Id*. at 9:14-10:19.)

---

[5] Elyssa and Chad Lofgren were both sworn, and this refers to a statement she gave in the same transcript.

On the tax return, the preparer falsely claimed that Gilbert incurred $84,378 in expenses for the Amazon-related business. (Ex. 45 p. 15.) Gilbert did not incur such expenses, and did not provide this information to the preparer. (*Id*. at 15:3-20:7.) When shown her return, Gilbert thought the amount must be "$8,400," not $84,000. (*Id*. at 16:13-18.)  Gilbert did not lose $78,750 (an amount equivalent to over 88% of her wages earned in 2024) operating a business. (*Id*. at 16:19-17:6.) Gilbert paid Sobode a fee, and a tip, at the time her tax return was prepared, totaling around $300. (*Id*. at 13:4-20.) Sobode falsely told Gilbert that *the IRS* would take a fee from Gilbert's refund. (*Id*. at 13:21-14:6, 14:12-24.) Rather, Sobode took over $900 in additional fees from the refund without Gilbert's knowledge. (*Id*. at 14:12-24, Ex. 46.)

In addition to the examples above, the customers in **Attachment A** gave sworn statements or testimony attesting that information that the Defendants reported on the Forms Schedule C attached to their tax returns was false and reported without their knowledge.

### B.  EITC Fraud and Failure to Comply with Due Diligence Requirements.

The Defendants' customers' tax returns frequently claim the Earned Income Tax Credit ("EITC"). The EITC is a refundable tax credit available to low-income workers depending on their income, filing status, and number of qualifying dependents. *See* 26 U.S.C. § 32. Because it is a refundable credit, claiming an EITC can reduce a taxpayer's tax liability below zero, enabling the customer to receive a payment from the U.S. Treasury. For example, in tax year 2022 the maximum EITC was $6,935 and was available to eligible individuals with three dependent children who earned income between $15,400 and $20,150. (Vazquez Decl. at ¶ 33.)

The Defendants falsify information to claim an inflated EITC, often by claiming fabricated expenses reported on a Schedule C to generate a bogus loss and offset actual earned income. (*Id*. at ¶ 34.) In doing so, the Defendants violate 26 U.S.C. § 6695(g), which prohibits

preparers from claiming the EITC without conducting proper "due diligence." A preparer must

make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC,

document the preparer's compliance with the requirements, and keep that documentation for

three years. 26 C.F.R. § 1.6995-2. Preparers must also conduct "due diligence" when claiming

the American Opportunity education credit and other credits. The Defendants fail to conduct due

diligence when claiming these credits. (*Id*. at ¶¶ 35-37.)  It is inherently impossible for a preparer

to fabricate information on a tax return to claim the EITC and to simultaneously comply with the

due diligence requirements. Sobode told the IRS that she was not aware of the due diligence

requirements. (*Id*. at ¶ 15.) These requirements are publicly available. (*Id*. at ¶ 35.)

### C. False Deductions Reported on Form Schedule A.

The Defendants fabricate deductions on Form Schedule A ("Itemized Deductions") to

reduce customers' taxable income. Common claims include fabricated out-of-pocket medical

expenses (i.e. expenses not covered by insurance) and home mortgage interest. (*Id*. at ¶¶ 26-29.)

Typically, the Defendants' report entirely fabricated, or grossly exaggerated, medical expenses

or mortgage interest payments without their customers' knowledge.  These customers do not

provide the Defendants any information about such expenses, and do not know that the

Defendants claim these bogus deductions on their returns. The customers in **Attachment B** gave

sworn statements or testimony attesting that the information that the Defendants reported on the

Forms Schedule A attached to their tax returns was false and reported without their knowledge.

### D. False Education Credits

The Defendants claim bogus education expenses and falsely claim refundable education

credits, including the American Opportunity credit, on customers' federal income tax returns.

(*Id*. at ¶¶ 30-32.)  The Defendants claim false education credits for customers who did not attend

college and had no qualifying education expenses, or inflate or fabricate the purported education

expenses, up to the maximum $4,000, claimed on tax returns. (*Id*.)  The customers in

**Attachment C** gave sworn statements or testimony attesting that the education credits claimed

on their tax returns were false and claimed without their knowledge.

E.  **False Household Employee Wages Reported on Form Schedule H.**

In response to the COVID-19 pandemic and its economic impact, Congress passed the

Families First Coronavirus Response Act (the "FFCRA"). The FFCRA provided for a credit for

sick and family leave wages paid by an employer. The Defendants falsely report on Form

Schedule H ("Household Employment Taxes") that customers employ a household employee to

whom they paid wages, including qualified sick and family leave wages. The Defendants then

falsely claim a deduction for the phony sick and family leave wages purportedly paid. (Vazquez

Decl. at ¶¶ 43-44.) For specific examples, *see* Denton and Lofgren, *supra*, and Martinez, Ex. 21.

F.  **Failing to Identify the Actual Paid Preparer of Tax Returns.**

The Defendants prepare tax returns on which they do not identify themselves as the paid

preparer or the paid preparation firm. Through at least 2022, the Defendants prepared tax returns

for customers using TaxAct software and falsely reported on these tax returns that the customer

self-prepared the return. (Vazquez Decl. at ¶¶ 7-13, 38-42.) The IRS refers to tax return preparers

who do not identify themselves as the paid preparer on tax returns they prepare, and particularly

those who falsely report that the customer self-prepared the return, as "ghost preparers." *See*

*United States v. Umbrella Fin. Servs., LLC*, 715 F. Supp. 3d 967, 974 n.2 (N.D. Tex. 2024).

The Defendants' customers identified them as the paid preparers of these tax returns, and

the IRS identified the computer IP addresses from which these tax returns were transmitted to the

IRS. The IRS then identified tax returns transmitted from these computer IP addresses to identify

13

the tax returns that the Defendants prepared as "ghost preparers," so long as they originated with the identified IP addresses. (Vazquez Decl. at ¶¶ 7-9, 15.) Through this process, the IRS identified the following number of tax returns that the Defendants prepared in 2018 through 2022 from these IP addresses:

IP address 73.166.63.5

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | Number of Returns with a Schedule C | Number of Returns Claiming EITC |
|---|---|---|---|---|
| 2022 | 1,485 | 1,476 | 1,346 | 785 |
| 2021 | 1,644 | 1,629 | 1,437 | 765 |
| 2020 | 1,461 | 1,442 | 1,292 | 675 |
| 2019 | 9 | 8 | 8 | 4 |

IP address 73.166.60.139

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | Number of Returns with a Schedule C | Number of Returns Claiming EITC |
|---|---|---|---|---|
| 2019 | 1,158 | 1,149 | 1,024 | 581 |
| 2018 | 650 | 642 | 573 | 308 |

(*Id*. at ¶¶ 16-19.) Since 2023, the Defendants began to identify themselves on tax returns they prepared. But even since 2023, in many instances customers identified Sobode as the person who prepared their tax return, when the tax return identifies a different individual as the paid preparer.

A preparer who fails to sign a tax return that she prepares, or fails to report her identifying number, or a tax preparation firm that fails to report its identifying number, violates 26 U.S.C. §§ 6695(b) and (c).

**G. Failing to Review Tax Returns and Disclose Information to Customers.**

The Defendants also fail to review the completed returns with customers and fail to explain what is reported on the return. (*See, e.g*., Cummings Dep. at 34:21-35:20, 39:13-40:6, 41:3-42:1; Canas Dep. at 29:25-30:19; Benitez Dep. at 17:20-18:1; Gilbert Aff. at 19:8-20:7;

14

Logren Aff. 25:16-21; Guerrero Aff. at 26:1-4; Brister Aff. at 17:22-18:2, 18:6:14; Pynes Aff. at

14:10-12, 21:18-22; Rice Decl. ¶ 6; Blanco Decl. ¶ 4.)

**H. Excessive and Often Undisclosed Tax Preparation and Related Fees.**

Customers were not aware of the high fees the Defendants charged or were surprised to

see that the fees were much higher than they were told. Typically, the Defendants charge their

customers at the time the tax return is prepared.  Customers believe that this is the tax

preparation fee.  However, the Defendants then take additional fees, including a tax preparation

fee, from their customers' tax refunds. Customers are shocked to learn that this undisclosed tax

preparation fee taken – without customers' knowledge or consent – from the customers' tax

refunds is, in several cases, *nearly $5,000*. (*See* Denton Aff. at 9:16-10:13 ($4,799 tax

preparation fee); Pynes Aff. at 18:3-25, 20:11-21, 20:22-22:1 (including one $4,799 tax

preparation fee); Lofgren Aff. at 13:1-20, 15:25-16:15, 26:13-27:13; Elyssa Lofgren Aff. at

14:20-22, 16:20-25; Gilbert Aff. at 13:21-14:6, 14:12-24.)  The Defendants unjustly profit from

this activity.  The false or fraudulent claims that the Defendants make on customers' tax returns

result in bogus tax refunds so large that the Defendants are able to take these funds without the

customers' knowledge.  <u>All of these illicit practices must be stopped</u>.

## II. Standard of Review

Courts consider four factors for a preliminary injunction:

> To obtain a preliminary injunction, the plaintiff must show 1) that there is a
> substantial likelihood that it will succeed on the merits, 2) that there is a
> substantial threat that it will suffer irreparable injury if the district court does not
> grant the injunction, 3) that the threatened injury to the plaintiff outweighs the
> threatened injury to the defendant, and 4) that granting the preliminary injunction
> will not disserve the public interest.

*Sierra Club v. Fed. Deposit Ins. Corp.,* 992 F.2d 545, 551 (5th Cir. 1993); *United States v. Ajak*,

765 F. Supp. 3d 552, 557 (N.D. Tex. 2025) (entering preliminary injunction against tax

preparers); *United States v. Stinson*, 661 F. App'x 945, 949 (11th Cir. 2016) (upholding preliminary injunction entered against tax preparer). The standard for a preliminary injunction is the same as the standard for a temporary restraining order. *Ajak*, 765 F. Supp. 3d at 557 (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

When considering whether the United States is likely to prevail on the merits for injunctive relief under 26 U.S.C. §§ 7407, 7408, and 7402, the Court must look to the statutory criteria in these statutes and determine whether an injunction is necessary and appropriate. *United States v. Stinson*, 2016 WL 7426582, at *2 (M.D. Fla. Jan. 28, 2016), *aff'd*, 661 F. App'x 945 (11th Cir. Sept. 14, 2016). "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The Court "may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club*, 992 F.2d at 551. "Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Id.* (citation omitted). Here, the government is primarily relying on sworn statements or deposition testimony of witnesses, including the Defendants' customers, and IRS business records.

A district court may issue a preliminary injunction without an evidentiary hearing. *See Sierra Club*, 992 F.2d at 551; *United States v. Umbrella Fin. Servs., LLC*, 715 F.Supp.3d 967, 972 (N.D. Tex. 2024) ("The court is deciding this motion on the papers, without conducting an evidentiary hearing, as permitted by Fed.R.Civ.P. 43(c).").

### III. Argument

The Defendants' conduct warrants injunctive relief under 26 U.S.C. §§ 7402, 7407, and 7408. Section 7402 allows a court to enter injunctions and other relief as "may be necessary or appropriate for the enforcement of the internal revenue laws." Courts commonly enter TROs and preliminary injunctions under these Internal Revenue Code sections. *See, e.g.*, *Ajak*, 765

16

F.Supp.3d at 558-564 (entering preliminary injunction); *United States v. Ajak*, 2025 WL 452415

(N.D. Tex. Jan. 23, 2025) (entering TRO); *Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 971;

*Stinson*, 2016 WL 7426582; *United States v. Saint-Hilaire*, 2024 WL 2871773 (S.D. Fla. May

16, 2024); *United States v. Marc*, 2019 WL 11502800 (M.D. Fla. Jan. 16, 2019); *United States v.*

*Harden*, 2018 WL 6982144 (M.D. Fla. Dec. 21, 2018) (entering TRO).

A.    **The Statutory Elements for Injunctive Relief under §§ 7407 and 7408 are Satisfied.**

    1.    **The Defendants' Conduct Warrants an Injunction Under 26 U.S.C. § 7407.**

       Section 7407 grants the Court the power to enjoin a tax return preparer from specified

conduct, including conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, and engaging in

other fraudulent or deceptive conduct which substantially interferes with the administration of

the internal revenue laws. 26 U.S.C. § 7407(b)(1). If such conduct is continual or repeated, the

Court may enjoin a return preparer from preparing any federal tax returns if it finds that a

narrower injunction would be insufficient to prevent further interference with the administration

of the internal revenue laws. *Id*. Tax return preparers violate § 6694(a) by understating a

taxpayer's liability due to an unreasonable position, § 6694(b) by recklessly or intentionally

disregarding IRS rules or regulations, § 6695(c) by not identifying themselves as the paid return

preparer, and § 6695(g) by claiming the Earned Income Tax Credit without complying with the

statutory due diligence requirements. *United States v. Stinson*, 239 F.Supp.3d 1299, 1318-19

(M.D. Fla. 2017). Once the Government shows any of the penalty conduct or other violations

enumerated in § 7407, it need only also demonstrate "that injunctive relief is appropriate to

prevent recurrence of such conduct." 26 U.S.C. § 7407(b)(2). *See Ajak*, 765 F.Supp.3d at 558.

          a.    **The Defendants Repeatedly and Continually Violate §§ 6694 and 6695**
              **and Engage in Other Fraudulent or Deceptive Conduct.**

Sections 6694(a) and (b) of the Internal Revenue Code penalize return preparers who

17

understate customer liability based on unrealistic positions, or due to the preparer's willful, reckless, or intentional disregard of rules and regulations. The Defendants continually and repeatedly violate §§ 6694(a) and (b) by preparing tax returns intentionally reporting phony income, expenses, deductions, and credits. The Defendants' continual and repeated blatant disregard for the law constitutes willful, reckless, or intentional disregard of rules or regulations.

The Defendants violate § 6695(c) by not identifying on customers' tax returns the true preparer of the return, in violation of § 6109(a)(4). *See United States v. Espinal*, 2021 WL 3666323, at *4 (S.D. Fla. Aug. 18, 2021); *Stinson*, 239 F.Supp.3d at 1320. Acting as a "ghost preparer" also constitutes fraudulent or deceptive conduct which substantially interferes with the administration of the Internal Revenue laws. *Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 975.

The Defendants repeatedly and continually violate § 6695(g) because, by deliberately fabricating claims and deductions on customers' tax returns, they completely disregard the due diligence requirements. It is inherently impossible to comply with the due diligence requirements and to legally document claims made on a tax return in connection with the EITC, or other credits including education credits, when the underlying claims are fabricated by the tax return preparer. All of the misconduct described above constitutes fraudulent or deceptive conduct that substantially interferes with the administration of the internal revenue laws, as does the practice of charging high fees without customers' knowledge and not properly reviewing and explaining the completed tax return and the fee agreement to customers.

### b.    A Narrower Injunction Will Not Suffice.

Since the Defendants began preparing tax returns, their entire business model has been predicated on claiming the highest refund by fabricating claims and deductions, enabling them to take thousands of dollars from their customers' bogus tax refunds without their knowledge. A

18

more limited preliminary injunction will not suffice here. *See Ajak*, 765 F.Supp.3d at 561 ("As explained above, Defendants have engaged in behavior violative of §§ 6694 and 6695 for a period of, at least, six years. [] Specifically, they have prepared tax returns in a way which makes it difficult for the Government to identify which tax returns each Defendant has personally prepared. [] Considering this, the court concludes that a narrower § 7407 injunction is insufficient to prevent misconduct."). Factors relevant to this inquiry include:

> the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction[s]; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*United States v. Kaun*, 827 F.2d 1144, 1149-50 (7th Cir. 1987); *United States v. Reddy*, 500 F. Supp. 2d 877, 882 (N.D. Ill. 2007).

The gravity of the harm is severe. The Defendants make false claims on tax returns to generate large, bogus refunds. They falsely report to the IRS that they comply with due diligence requirements in an attempt to conceal their actions. They conceal that they are the paid preparers of the tax returns making false claims. They take thousands of dollars in fees from customers' tax refunds (albeit bogus refunds), without informing their customers. There is little doubt that absent a TRO and a preliminary injunction, this misconduct will continue. An order barring only specific conduct will have little or no effect. The Defendants will either make different false claims, attempt to conceal their actions, find new ways to assist with return preparation, or disregard the order.  The Defendants' repeated and flagrant disregard for the law demonstrates that they cannot be involved with tax return preparation in 2026 and until this case is resolved.

### 2.    The Defendants' Continual and Repeated Violations of 26 U.S.C. § 6701 Warrant Injunctive Relief Under 26 U.S.C. § 7408.

Section 7408 grants the Court the power to enjoin a tax return preparer from conduct

19

subject to any penalty if the Court finds that the preparer engaged in conduct subject to penalty

under 26 U.S.C. § 6701 by aiding, advising, or assisting in the preparation of a tax return

knowing (or having reason to believe) that it will be used in connection with any material matter

arising under the internal revenue laws and will result in an understatement of another person's

tax liability, and if the Court concludes that injunctive relief is appropriate to prevent the

recurrence of such conduct. 26 U.S.C. §§ 6701 and 7408. *See Stinson,* 239 F.Supp.3d at 1322.

"Simply put, § 6701(a) 'imposes a penalty on any person who knowingly aids and abets

others in underreporting [their] tax liability.'" *Ajak*, 765 F.Supp.3d at 562 (quoting *United States

v. Simon*, 824 Fed.App'x. 986, 990 (11th Cir. 2020)). Here, the Defendants engage in misconduct

including preparing bogus Schedules C and Schedules A, claiming bogus education credits, and

bypassing EITC due diligence requirements. These actions are intended to (and do) illegally

boost customer refunds, from which the Defendants subtract undisclosed and exorbitant fees.

Because these phony claims reduce customers' tax liabilities, they certainly relate to a "material

matter." *See Warner v. United States*, 726 F.Supp. 1287, 1290 (S.D. Fla. 1989); *United States v.

Warden,* 545 F.2d 32, 37 (7th Cir. 1976). The Defendants, like any tax return preparers, know

these actions will understate customers' liabilities. Indeed, understating tax liability and falsely

inflating the refund is the intent: it provides the foundation to recoup exorbitant, undisclosed tax

preparation fees taken from the Treasury. The Defendants' efforts to conceal their conduct, like

feigning compliance with the due diligence requirements and not informing customers of the

claims reported on their tax returns, demonstrates that they know it is wrong.[6]

Once the United States demonstrates that the Defendants engaged in conduct subject to

---

[6] It is unthinkable that purportedly professional tax return preparers could *not* know it is wrong to concoct expenses, credits, deductions, or businesses to generate a tax refund.

penalty under § 6701, the Court may issue an injunction under § 7408 if injunctive relief is appropriate to prevent recurrence of that conduct. As with injunctive relief under § 7407, an injunction under § 7408 is also appropriate, and a narrower injunction would be insufficient.

**B.    The Defendants' Conduct Interferes with the Enforcement of the Internal Revenue Laws and Supports Injunctive Relief Under 26 U.S.C. § 7402.**

Section 7402(a) grants courts broad authority to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This authority is "in addition to and not exclusive of any and all other remedies" available to enforce the internal revenue laws. *Id.* The statute manifests "a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the Internal Revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). Thus, it allows for injunctions even where other remedies are available and allows courts "to enjoin interference with tax enforcement even when such interference does not violate any particular statute." *United States v. Ernst & Whinney,* 735 F.2d 1196, 1300 (11th Cir. 1984). The "majority of district courts in Texas and elsewhere" recognize "that the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction." *Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 978 (quoting *United States v. Padron*, 2017 WL 2060308, at *4 (S.D. Tex. May 12, 2017)); *Ajak*, 765 F.Supp.3d at 562. The court may, at its discretion, weigh the traditional factors when considering an injunction under § 7402. *Umbrella Fin. Servs., LLC*, 715 F.Supp.3d at 978. "It is sufficient under § 7402 for the Government to prove a pattern of gross negligence or recklessness, so long as injunctive relief is 'necessary or appropriate for the enforcement of the internal revenue laws.'" *Stinson*, 239 F.Supp.3d at 1325.

The Defendants' conduct, described above, substantially interferes with the enforcement of the revenue laws and supports injunctive and equitable relief under § 7402. Understating tax

liability constitutes substantial interference with the internal revenue laws. *United States v. Pugh*, 717 F. Supp. 2d 271, 299-300 (E.D. N.Y. 2010); *United States v. Franchi*, 756 F. Supp. 889, 893 (W.D. Pa. 1991) (inflating expenses and deductions). Conduct supporting injunctions under §§ 7407 and 7408 is also relevant to §7402. *United States v. Renfrow*, 612 F.Supp.2d 677, 691 (E.D. N.C. 2009). The equitable factors below favor a TRO and preliminary injunction.

**C.    The Equitable Factors Support Entry of a TRO and a Preliminary Injunction.**

**1.    There is a Substantial Likelihood of Success on the Merits.**

The government is likely to succeed on the merits. "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Where the balance of the equities weighs heavily in favor of granting the injunction, the movant need only show a substantial case on the merits. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981).

The Defendants' preparation of tax returns with false claims and deductions warrants injunctive relief: (1) under § 7407, because it constitutes a substantial understatement of tax and a reckless or intentional disregard of IRS rules or regulations, penalized by §§ 6694(a) and (b); (2) under § 7408, because it constitutes aid in the preparation of a federal tax return knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws, and knowing that if it is so used it will result in an understatement of another person's tax liability, penalized by § 6701; and (3) under § 7402, because these actions, along with other misconduct including, but not limited to, not identifying the actual preparer of the tax return, all interfere with the enforcement of the internal revenue laws. *See, e.g.*, *Umbrella Fin. Servs., LLC*, 715 F. Supp. 3d at 976.

Defendants, holding themselves out to the public as tax professionals, are presumed "to

22

be familiar with the Internal Revenue Code as well as the regulations and case law regarding the Code." *U.S. v. Venie*, 691 F. Supp. 834, 839 (M.D. Pa. 1988). Anyone, much less a professional, knows that fabricating claims on returns intentionally disregards the law. The Defendants flout the law, understate customers' tax liabilities, and interfere with the administration of the law, harming customers and maximizing their profit at the expense of the Treasury.

The Defendants' conduct is so egregious that they cannot be allowed to be involved with tax return preparation while this case proceeds. Based on their previous actions, the likelihood of recurrence of future violations is almost a certainty. Any assurances the Defendants provide to obey the law rings hollow in the light of their past conduct and false representations. *See Kaun*, 827 F.2d at 1150. Any defense that the Defendants posit at this stage should carry very little weight in light of their intentional efforts to repeatedly steal from and deceive the government.

### 2.    The United States and the Public will Suffer Irreparable Harm if a TRO and Preliminary Injunction is Not Issued.

The harm that the Defendants will cause if allowed to operate the next tax season would be irreparable. This harm includes the likely loss of millions of dollars to the Treasury, fraud against their customers, the injury to law-abiding tax return preparers, and undermining public confidence in the tax law. The IRS would have to further apply its limited enforcement resources and spend countless hours monitoring the Defendants. The Defendants' activities will also cause "further depletion of Government resources" by way of potential customer audits. *See United States v. Music Masters, Ltd.*, 621 F. Supp. 1046, 1058 (W.D.N.C. 1985).

Most importantly, the government cannot possibly recover all of the tax losses associated with the widespread fraud from the Defendants' past conduct, much less any future misconduct they are likely to engage in. Actions against the Defendants' customers who receive improper refunds "would entangle the Government in a maze of lawsuits." *Id*. (quoting *United States v.*

23

*Savoie*, 594 F. Supp. 678, 682 (W.D. La. 1984)) (quotations omitted). Such individual remedies would require an impossibly disproportionate share of the government's limited resources and would not be as effective as enjoining the Defendants from preparing tax returns. Finally, many of the Defendants' customers have low incomes and minimal financial resources and cannot afford exposure to additional financial liabilities due to the Defendants' actions. Even if these customers are audited and found to have understated tax liabilities, they may not have the means to timely (if at all) repay the erroneous refunds that they received, plus any additional tax owed.

### 3. The Injury to the United States and the Public Outweighs the Harm Caused to the Defendants by Enjoining them from Preparing Tax Returns.

While a TRO and an injunction barring the Defendants from preparing tax returns will impair their current "livelihood," their entire business model is predicated on defrauding their customers and the government (which no one has the right to do), and their incomes come from fees subtracted from bogus tax refunds stolen from the Treasury. The Defendants' profiteering from illicit return preparation is far outweighed by the harm to the government and the public. *See Ajak*, 765 F.Supp.3d at 563-64; *United States v. Marc*, 2020 WL 6064793, *9, *report and recommendation adopted*, 2020 WL 5542819 (M.D. Fla. 2020); *Saint-Hilaire*, 2024 WL 2871773 at *11; *United States v. Buddhu*, 2009 WL 1346607, *5 (D. Conn. May 12, 2009).

### 4. A TRO and Preliminary Injunction will Benefit the Public Interest.

A TRO and preliminary injunction will serve the public interest. It will protect the public *from* the Defendants by sparing their customers from having false tax returns filed in their names and facing potential IRS audit. *See Pugh*, 717 F.Supp.2d at 302 (stating an "injunction will prevent taxpayers from having inaccurate, frivolous or fraudulent returns filed in their name that would subject them to liability for overdue taxes, penalties and interest."). The Defendants' practices are a disservice to the public. Their business model is based upon stealing money from

24

the Treasury and callously exposing customers to financial and other harm, all for their own ill-gotten gain. Additionally, every bogus refund the Defendants claim not only depletes the Treasury, but—to the extent that such efforts can even be made—requires the expenditure of additional resources to attempt their recovery. Finally, "[t]here is a 'broad public interest in maintaining a sound tax system.'" *Ajak*, 765 F.Supp.3d at 564 (quoting *United States v. Grider*, 2010 WL 4514623, at *4 (N.D. Tex. 2010); *United States v. Lee*, 455 U.S. 252, 253 (1982)).

## IV. Conclusion

To prevent further harm, and supported by substantial evidence, the Court should enter against the Defendants a 1) TRO to remain in effect for 14 days or until the Defendants respond to the motion, a hearing is held (if necessary), *and* a ruling issued on the motion for preliminary injunction, and 2) preliminary injunction, reflecting the terms in the attached proposed orders.

Dated:  January 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

 s/ Daniel A. Applegate
DANIEL A. APPLEGATE (MI Bar No. P70452)
Attorney-in-charge
Trial Attorney, Tax Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 7238, Washington, D.C. 20044
Telephone: (202) 353-8180
Fax: (202) 514-6770
daniel.a.applegate@usdoj.gov

Of counsel:
NICHOLAS J. GANJEI
United States Attorney

Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2026, I filed the foregoing United States' Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support through the Court's CM/ECF system.


s/ Daniel A. Applegate
DANIEL A. APPLEGATE
Trial Attorney, Tax Division